**Lindsay FAISST, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 12–00–00289–CR.**

Court of Appeals of Texas, Tyler.

April 23, 2003.

---

Jeff L. Haas, Tyler, for appellant.

Edward J. Marty, Tyler, for State.

Panel consisted of WORTHEN, C.J. and GRIFFITH, J.

## OPINION ON REMAND

JAMES T. WORTHEN, Chief Justice.

Appellant Lindsay Faisst was certified as an adult and was charged with the offense of Intoxication Manslaughter. After certification and transfer to district court, Appellant entered a plea of guilty and was sentenced to confinement for ten years, probated. Appellant appeals the discretionary transfer from juvenile court.

In *Faisst v. State*, 2001 WL 1535453, at *1, 107 S.W.3d 7, 8 (Tex.App.-Tyler, November 30, 2001), we held that, based upon *Young v. State*, 8 S.W.3d 656, 666–67 (Tex. Crim.App.2000), this court did not have jurisdiction over Appellant's appeal because she pleaded guilty at the district court level. Disagreeing with our interpretation of *Young*, the court of criminal appeals has remanded this case for further proceedings consistent with its opinion. *See Faisst v. State*, 98 S.W.3d 226 (Tex. Crim.App.2003). We affirm.

### BACKGROUND

Appellant was driving a vehicle, with Ashleigh McCaa as her passenger, when the Whitehouse police clocked her traveling above the speed limit. She attempted to flee when the police began pursuit of her vehicle. As Appellant was negotiating a curve at a high rate of speed, estimated at 100 m.p.h., she lost control of her car and hit a large tree. She was thrown from the vehicle and sustained minor injuries, but her passenger was decapitated and an arm was ripped off when her side of the vehicle made contact with the tree. Because of the amount of force which had been applied to McCaa's seatbelt, it finally gave way, and she was thrown from the

car into a barbed wire fence. At the scene, Appellant asked repeatedly, "Where am I?" and "Is my car o.k.?" Her speech was slurred and hard to understand, although there was no evidence of head trauma. It was later determined that Appellant was intoxicated at the time of the incident.

Appellant was sixteen years old when the accident occurred. An original petition was filed in juvenile court alleging that Appellant had engaged in delinquent conduct. The State then filed its motion for discretionary transfer to district court. By the time of the hearing, Appellant had turned seventeen. After hearing testimony, considering evidence and argument of counsel, the juvenile court certified Appellant as an adult, and transferred this case to the district court.

Appellant waived presentment of the indictment for Intoxication Manslaughter, waived her right to trial by jury, and pleaded guilty without benefit of a plea recommendation. A pre-sentence report was prepared, and after presentment of evidence and argument, Appellant was sentenced to ten years of confinement in the Texas Department of Criminal Justice—Institutional Division. Appellant then filed a Motion for Probation after Execution of Sentence, which the trial court granted. This appeal followed.

### DISCRETIONARY TRANSFER

#### Standard of Review

 In order to transfer a juvenile to adult court, the court must find that (1) there is probable cause to believe that the juvenile committed the offense alleged in the petition,[1] and (2) because of the seriousness of the offense alleged or the back-

ground of the child, the welfare of the community requires criminal prosecution. TEX. FAM.CODE ANN. art. 54.02(a)(3) (Vernon Supp.1998). To facilitate this decision, the Family Code sets out criteria for the court to consider:

(1) whether the alleged offense was against a person or property, with greater weight in favor of transfer given to offenses against the person;

(2) the sophistication and maturity of the child;

(3) the record and previous history of the child; and

(4) the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court.

TEX. FAM.CODE ANN. art. 54.02(f) (Vernon Supp.1998). While the juvenile court must consider all of these factors before transferring the case to district court, it is not required to find that each factor is established by the evidence. *In re D.D.*, 938 S.W.2d 172, 176 (Tex.App.-Fort Worth 1996, no pet.). And the juvenile court is not required to give each factor equal weight so long as each is considered. *In re J.J.*, 916 S.W.2d 532, 535 (Tex.App.-Dallas 1995, no writ); *In re C.C.G.*, 805 S.W.2d 10, 15 (Tex.App.-Tyler 1991, writ denied). Further, a court does not abuse its discretion by finding the community's welfare requires transfer due to the seriousness of the crime alone, despite the child's background. *D.D.*, 938 S.W.2d at 177; *C.C.G.*, 805 S.W.2d at 15.

At the conclusion of the transfer hearing, the juvenile court issued the following findings:

---

1. Appellant stipulated to her age and that there was probable cause to believe that she

had committed intoxicated manslaughter.

(1) The Court finds that the said act would be a felony under the laws of the State of Texas if committed by an adult.

(2) The Court finds that the alleged offense was against a person.

(3) The Court finds that the Child is of sufficient sophistication and maturity to be tried as an adult. The Court specifically finds that the Child is of sufficient sophistication and maturity to aid an attorney in her defense.

(4) The Court finds that because of the extreme and severe nature of the alleged offense, the prospects of adequate protection for the public and likelihood of reasonable rehabilitation of the Child by the use of procedures, services and facilities which are currently available to the Juvenile Court are in doubt.

■■■ The standard of review for an appellate court in reviewing a juvenile court's decision to certify a juvenile defendant as an adult is abuse of discretion. *In the Matter of K.B.H.*, 913 S.W.2d 684, 687–88 (Tex.App.-Texarkana 1995, no writ). A court abuses its discretion when it acts in an arbitrary or unreasonable manner. *In the Matter of J.P.O.*, 904 S.W.2d 695, 702 (Tex.App.-Corpus Christi 1995, writ denied). Relevant factors to be considered when determining if the court abused its discretion include legal and factual sufficiency of the evidence. *KBH*, 913 S.W.2d at 688. The juvenile court's findings of fact are reviewable by the same standards as are applied in reviewing the legal or factual sufficiency of the evidence supporting a jury's answers to a charge. *J.P.O.*, 904 S.W.2d at 700.

■■■ When the legal sufficiency of the evidence supporting a certification and transfer order is challenged, we view the evidence in the light most favorable to the court's findings and determine whether there is any evidence to support such findings. *J.J.*, 916 S.W.2d at 535. It is not within our power to second guess the factfinder unless only one inference can be drawn from the evidence. *Id.* If there is more than a scintilla of evidence to support the finding, the no evidence challenge fails. *Id.*

■■■ By contrast, when the factual sufficiency of the evidence to support a certification and transfer order is challenged, we consider all of the evidence to determine if the court's finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *C.M. v. State*, 884 S.W.2d 562, 563 (Tex.App.-San Antonio 1994, no writ). Absent an abuse of discretion, we will not disturb a juvenile court's findings. *Id.*

In her sole issue, Appellant agrees that the facts of this offense are tremendously serious. However, taken in conjunction with the testimony at trial, Appellant asserts that they do not show that the welfare, safety and protection of the community require her adult criminal prosecution, which is a challenge to the juvenile court's fourth finding. Therefore, Appellant contends, because there is neither legally nor factually sufficient evidence to support the finding, the trial court abused its discretion when it transferred the case to the district court.

### Legal Sufficiency

■■■ During the discretionary transfer hearing, Joe Berg, a juvenile probation officer for Smith County, testified for the State. He explained that in the juvenile justice system, the minimum punishment for an offense is three months of intensive supervision, plus six months of probation. The maximum punishment is twelve months of intensive supervision, followed by twelve months of probation. The juvenile court loses its jurisdiction, however,

when the child turns eighteen, whether he has completed his supervision and probation or not. Berg opined that the crime for which Appellant was charged was of a most serious nature, and that if she were not certified an adult, she should be assessed the maximum punishment. He explained, however, that Appellant was already seventeen, and that the court would lose jurisdiction over her long before she had served her sentence. Berg also testified that when a person who is under the influence of alcohol commits an offense where death occurs, that person needs a minimum of fifteen to twenty months of supervision to ensure that rehabilitation takes place.

Berg plainly stated that because of the serious nature of intoxication manslaughter, Appellant requires longer supervision than the juvenile justice system can provide. We hold, therefore, that this evidence is legally sufficient to support the juvenile court's finding that

> because of the extreme and severe nature of the alleged offense, the prospects of adequate protection for the public and likelihood of reasonable rehabilitation of the Child by the use of procedures, services and facilities which are currently available to the Juvenile Court are in doubt.

### Factual Sufficiency

 In addition to the above-described testimony, Berg stated that Appellant had been issued a ticket for the offense of Minor in Possession in June of 1998, one and a half years before the accident. At that time, she was required to complete, and did complete, six hours of alcohol education. He pointed out that the education obviously had no effect on Appellant's actions. Berg further related Appellant's admission that she had been drinking for six months before the accident, and had been intoxicated on at least six or seven of those occasions. Berg opined that this level of drinking showed that Appellant had a significant problem with alcohol abuse.

In addition to Berg's testimony that Appellant should be transferred to district court because the juvenile system did not have the resources to adequately supervise or rehabilitate Appellant, a Social Evaluation and Investigative Report which was prepared by Smith County Juvenile Services was also admitted into evidence. The Deputy Director and the investigating Juvenile Probation Officer both recommended that Appellant be transferred to the district court of Smith County, Texas for criminal prosecution, due to the fact that she had committed a felony offense. Attached to the report was a Texas Department of Public Safety Traffic Law Enforcement Division Offense Report. The investigating officer completed this report after speaking to witnesses and analyzing all physical evidence. He concluded that

> Lindsay Marie Faisst chose to drink alcoholic beverages, even though she was under the age of 21. She chose to drive after reaching a state of intoxication. She chose to accelerate her vehicle to an unsafe speed to avoid being stopped by Whitehouse Police Department. Then she chose to continue driving at the unsafe speed as she entered a curve, causing her vehicle to leave the roadway on the North side of the road and strike the trees. Based upon the actions of Ms. Faisst prior to and during this incident, it is certain that Ms. McCaa died as a direct result of Ms. Faisst's decision to drive while intoxicated, to flee from the police and to exceed the critical curve speed on a narrow, winding, two lane farm to market roadway.

The investigating officer further explained that Appellant had made very poor deci-

sions which a sober person would not normally have made.

James Brown, the owner of Trinity Counseling Associates of East Texas, testified on Appellant's behalf. He stated that he had seen Appellant on two occasions. The first time he simply evaluated her maturity level. During the second interview, he spoke with Appellant about the accident. He opined that because of her remorse, he did not believe that there was a high probability that an incident like the one in question would reoccur. Brown also stated that he was not aware that Appellant had any prior juvenile referrals, any truancy problems or any other criminal violations. But he admitted that Appellant had not told him that she received an MIP prior to the incident. During the hearing, the following exchange occurred between Appellant's attorney and Brown:

Q: Do you see anything other than the results of what happened that night, Ms. Faisst, as any indication that it was any different than any teenager experimenting with alcohol?

A: If I see anything, it is vague. There may have been something growing in this pattern that would be difficult to identify clinically and to spell out. And probably the thing that you know is most consistent in this pattern is the deception of her parents about where she was and what she was doing.

Q: Would you agree with me that it's not abnormal for teenagers to deceive their parents with who they're with and where they have been?

A: I agree that that's not an unusual pattern, but however when it begins to fall into something that's a regular pattern, that might be an indication of a problem. That's what I mean by something that's ill defined, perhaps.

Brown admitted that he had made no recommendation in his report about whether or not Appellant's case should remain in the juvenile system. He also stated that he was aware that there had been a change in the law from "best interest of the child" to determining an appropriate punishment for a juvenile.

Tom Allen, a psychologist who also interviewed Appellant on two occasions, testified that in regard to the question of whether or not Appellant would be a danger to the community, he saw little to no risk assessment issues. He opined that there was a minimal risk of recidivism because of her profound grief and remorse. He also stated that any concerns which society might have about Appellant could be adequately addressed in an eleven-month period. Further, Allen testified that he had found no indication of psychopathy, conduct disorder, attention deficit disorder, or any other type of mental disease or defect. He also opined that an adolescent's judgment is not as defined or mature as an adult's. Allen would not comment on whether or not eleven months of probation would be adequate to punish Appellant for causing the death of another individual. He stated that "as far as I'm concerned, that's up to the court not a mental health expert."

Shirley Estes, a dance teacher in the Whitehouse Independent School District, testified that when Appellant was in her class, she had been a good student, was respectful, had a sweet disposition, and interacted well with other students. Additionally, she stated that Appellant was a "normal teenager." Lee Yeager, also a teacher with WISD, agreed with Estes' evaluation of Appellant. He further testified that after the accident, Appellant had a very difficult transition, that she no longer interacted with other students, and that she was sometimes zombie-like.

#### Conclusion

After a thorough review of the record, we find not only legally sufficient, but also factually sufficient evidence to support the juvenile court's fourth finding. The court's finding that because of the severity of the offense, which requires a long period of supervision and probation, the juvenile justice system cannot adequately protect the public or provide for the rehabilitation of Appellant, is not so against the great weight and preponderance of the evidence as to be manifestly unjust. Accordingly, we hold that the juvenile court did not abuse its discretion when it certified Appellant as an adult and transferred her case to the district court. We overrule Appellant's sole issue and affirm the judgment of the trial court.