*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

★ ★ ★  ★ ★ ★

# OPINION

No. 04-09-00360-CR

Kevin **BLEYS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 386th Judicial District Court, Bexar County, Texas
Trial Court No. 2008-CR-8319
Honorable Laura L. Parker, Judge Presiding

Opinion by:   Marialyn Barnard, Justice

Sitting:      Sandee Bryan Marion, Justice
              Phylis J. Speedlin, Justice
              Marialyn Barnard, Justice

Delivered and Filed:  May 12, 2010

AFFIRMED

Following a plea of guilty, appellant Kevin Bleys was convicted of aggravated assault with a deadly weapon. The jury sentenced Bleys to sixteen years confinement in the Texas Department of Criminal Justice-Institutional Division. On appeal, Bleys complains the trial court abused its discretion when it waived juvenile jurisdiction and transferred Bleys's case to adult court. We affirm the trial court's judgment.

**BACKGROUND**

Bexar County Deputy Sheriff Santos Chavarria Jr. was dispatched to the scene of a stabbing. When he arrived, he found a chaotic scene that included neighbors, family members, the victim, and Bleys. The victim, twelve-year-old Mohammad Martinez, was lying face down near a wooded area. Martinez suffered multiple stab wounds and was covered in blood. Deputy Chavarria believed Martinez would likely die. Deputy Chavarria asked Martinez, who was conscious, who had done this to him. Martinez said it was a long story. Martinez was airlifted to the hospital where he underwent emergency surgery. Martinez's lungs had collapsed, his liver, small intestine, and duodenum were punctured, and his gall bladder had to be removed. He also suffered stab wounds to his right arm that caused nerve damage, two stab wounds to his chest, and one stab wound on his left arm. In all, it appeared Martinez suffered as many as seventeen stab wounds. He remained in the hospital for a month. An expert stated Martinez would have likely died but for the emergency surgery.

When Deputy Chavarria arrived, Bleys was sitting next to Martinez. Bleys was covered in blood and hyperventilating. The deputy asked Bleys what had happened, and Bleys told him he heard screaming in the woods and then saw Martinez come out of the woods limping and bleeding. Deputy Chavarria noticed Bleys had a cut to his finger that was "serrated." When the deputy went into the woods, he found the foliage disturbed, blood, and a serrated steak knife. Deputy Chavarria believed Bleys might have been involved in the stabbing. Bleys was acting desperate and crazy.

Initially, Martinez continued to proclaim it was a "long story" whenever he was asked what happened. However, after a time, Martinez told his mother Bleys stabbed him. When he testified at trial, Martinez said he and Bleys were good friends even though Bleys was older and taller.

According to Martinez, he and Bleys had a third friend, Brian Tolliver. Tolliver was a couple of years older than Martinez, and Bleys was about a year and a half older than Tolliver.

Martinez testified that on the day of the stabbing, he went to Tolliver's house to say good-bye to Tolliver because Tolliver and his family were going on vacation. Bleys was at Tolliver's house as well. Martinez said he and Bleys left Tolliver's house to play basketball at Martinez's house. Bleys left Martinez's house, but in a short while he returned and suggested they go into the woods behind Martinez's house. Martinez said they went further into the woods than they usually did, and when they got to a place where the brush was thick, Martinez decided to go home. Martinez testified he was leading the way back to his house when Bleys knocked him down. Bleys then stabbed him several times. Martinez tried to resist, to scream, but it became increasingly difficult. Martinez said that after the stabbing, Bleys picked him up and tried to strangle him and cut his throat. Bleys panicked, and Martinez, in an attempt to calm Bleys, told Bleys he would tell whatever story Bleys wanted him to tell. At Martinez's request, Bleys helped him make his way closer to the house.

Bleys apparently gave several stories about the stabbing. He told two neighbors Martinez had fallen on a stick. He told one of those same neighbors a hunter had injured Martinez, but then said he did not really know what happened. Bleys gave three different explanations to an investigator from the Bexar County Sheriff's Department. In each version, Bleys and Martinez entered the woods together, but the story changed each time as to subsequent events.

On the evening of the stabbing, Bleys was brought to the Sheriff's Department by his father. Bleys turned over his bloody clothing. That same evening, in a videotaped interview with the investigator handling the case, William Spaulding, Bleys insisted someone else had injured Martinez. Two days later, Bleys and his father returned to the Sheriff's Department and spoke to a different

investigator, Aaron Von Maldau. Bleys's father told Investigator Von Maldau that Bleys stabbed Martinez and wanted to do the right thing. Investigator Von Maldau called Investigator Spaulding, who was at the hospital interviewing Martinez, and told him Bleys confessed. Investigator Spaulding returned to the Sheriff's Department and took Bleys's videotaped statement. Bleys confessed during the statement. The investigators subsequently obtained a warrant and arrested Bleys.

Bleys testified at trial. According to Bleys, he had known Tolliver for about ten years. Tolliver introduced Bleys to Martinez approximately two years before the trial. Bleys admitted he got along better with Tolliver than he did with Martinez, but felt his friendship with Tolliver was weakening. Bleys said he believed Martinez was the cause of the growing distance between himself and Tolliver.[1] Bleys admitted that by the day of the stabbing, he had become angry with Martinez, and contradicted himself by stating he thought of Martinez as a friend, but then denying being friends with him or spending much time with him. Bleys testified he decided to kill Martinez because Martinez made some negative remarks about Tolliver, which Bleys did not like. Bleys admitted that after he and Martinez entered the woods, he stabbed Martinez approximately thirteen times. He claimed he stopped because he realized what he was doing was "absolutely crazy." Bleys told the jury he could not believe he had stabbed Martinez. Bleys stated Martinez told him to calm down and take him back to his house, which he attempted to do, eventually dropping Martinez near the house. Bleys said he apologized to Martinez after the stabbing. Bleys claimed he initially lied about what happened because he was afraid of going to jail.

---

[1] Yet, Bleys also testified he believed their relationship was weakening because of Tolliver's increasing depression over a girl.

In addition to testifying on his own behalf, Bleys called Dr. Brian Skop, a forensic psychiatrist, as a witness. Dr. Skop stated he believed Bleys is intelligent, but very shy and socially immature, with an almost pathological attachment to Tolliver. According to Dr. Skop, Bleys saw Martinez as a threat to his relationship with Tolliver, causing him to lose control and attack Martinez.

Bleys, who was sixteen-years-old at the time of the stabbing, was originally under the jurisdiction of the juvenile court system. However, the State subsequently filed an "Original Petition for Waiver of Jurisdiction and Discretionary Transfer to Criminal Court," asking the juvenile court to waive jurisdiction and transfer the case to the district court. A certification hearing was held, after which the trial court granted the State's petition, waiving jurisdiction and transferring the case to criminal district court. Bleys was thereafter indicted for aggravated assault with a deadly weapon.

Bleys pled guilty to the jury, which assessed punishment at confinement for sixteen years, implicitly denying his application for community supervision. The trial court entered judgment in accord with Bleys's plea and the jury's verdict. Bleys then perfected this appeal.

## ANALYSIS

In his sole point of error, Bleys contends the trial court abused its discretion in waiving jurisdiction and transferring his case to adult criminal court. He argues the evidence was factually insufficient to support the trial court's findings that (1) the procedures, services, and facilities available to the juvenile court were inadequate for Bleys's rehabilitation, and (2) the welfare of the community required proceedings in criminal district court. Bleys's entire argument is based on his belief that determinate sentencing was an available option that would have afforded adequate services, procedures, and facilities for his rehabilitation, and protected the community welfare.

"A defendant may appeal an order of a juvenile court certifying the defendant to stand trial as an adult and transferring the defendant to a criminal court under Section 54.02, Family Code." TEX. CODE CRIM. PROC. ANN. art. 44.47(a) (Vernon 2006). Such an appeal is permitted only in conjunction with an appeal of a conviction for the offense for which the defendant was transferred to criminal court. *Id.* art. 44.47(b). An appeal from a certification and transfer order is a criminal matter governed by the Texas Code of Criminal Procedure and the rules of appellate procedure applicable to criminal cases. *Id.* art. 44.47(c); *see also In re M.A.V.*, 88 S.W.3d 327, 331 n.2 (Tex. App.—San Antonio 2002, no pet.).

An appellate court reviews a juvenile court's decision to certify a juvenile defendant as an adult and transfer the proceedings to criminal court under an abuse of discretion standard. *State v. Lopez*, 196 S.W.3d 872, 874 (Tex. App.—Dallas 2006, pet. ref'd), *cert. denied*, 549 U.S. 1257 (2007); *Faisst v. State*, 105 S.W.3d 8, 12 (Tex. App.—Tyler 2003, no pet.). Absent an abuse of discretion, the appellate court will not disturb a trial court's transfer and certification order. *Faisst*, 105 S.W.3d at 12 (citing *C.M. v. State*, 884 S.W.2d 562, 563 (Tex. App.—San Antonio 1994, no writ)). In determining whether the trial court abused its discretion, the reviewing court considers the sufficiency of the evidence. *Faisst*, 105 S.W.3d at 12. A trial court's findings of fact are reviewed by the same standards applicable generally to legal and factual sufficiency review in criminal cases. *Id.* Here, Bleys challenged only the factual sufficiency of the evidence to support the trial court's findings relating to rehabilitation and community welfare. We will, therefore, consider all of the evidence to determine if the court's finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Id.* (citing *C.M.*, 884 S.W.2d at 563).

A juvenile court may waive its exclusive jurisdiction and transfer a child to a criminal court if: (1) the child is alleged to have committed a felony; (2) the child was fifteen years of age or older at the time the offense occurred, and the offense allegedly committed is a second or third degree felony, or a state jail felony;[2] (3) no adjudication hearing has been conducted concerning the alleged offense; and (4) after a full investigation and a hearing the juvenile court determines there is probable cause to believe the child committed the offense alleged, and that because of the seriousness of the offense or the child's background, the welfare of the community requires criminal prosecution. TEX. FAM. CODE ANN. § 54.02(a)(1), (2)(B), (3) (Vernon Supp. 2009). To facilitate this decision, the Texas Family Code provides criteria for the court to consider:

> (1) whether the alleged offense was against person or property, with greater weight in favor of transfer if the offense was against a person;
>
> (2) the sophistication and maturity of the child;
>
> (3) the record and previous history of the child; and
>
> (4) the prospects of adequate protection of the public and the likelihood of rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court.

*Id.* § 54.02(f). Although the juvenile court must consider each factor, it is not required to find that each factor has been established, nor is it required to give each factor equal weight. *Faisst*, 105 S.W.3d at 11.

In this case, Bleys challenges only the trial court's findings that (1) the seriousness of the offense and the child's background were such that transfer to a criminal district court was necessary

---

[2] The statute also provides the child may be transferred to criminal court if he is fourteen years of age or older and the alleged offense is a capital felony, an aggravated controlled substance felony, or a felony of the first degree. TEX. FAM. CODE ANN. § 54.02(a)(2)(A). In this case, however, it is undisputed that Bleys was sixteen at the time of the offense, and the offense alleged, aggravated assault, was a second degree felony. *See* TEX. PENAL CODE ANN. § 22.02(b) (Vernon Supp. 2009). Accordingly, the applicable portion of the statute is section 54.02(a)(2)(B).

for the welfare of the community, and (2) the procedures, services, and facilities currently available to the juvenile court were inadequate for Bleys's rehabilitation. *See* TEX. FAM. CODE ANN. § 54.02(a)(3), (f)4). In arguing these findings are supported by factually insufficient evidence, Bleys relies solely on the idea that an option was available that would have allowed for his rehabilitation and adequately protected the community–determinate sentencing.

A determinate sentence is one in which a juvenile is initially committed to a term in the custody of the Texas Youth Commission with a possible transfer to the Texas Department of Criminal Justice-Institutional Division. *See id.* § 54.04(d)(3) (Vernon Supp. 2009). Section 53.045(a) of the Family Code provides that when a child is alleged to have committed certain offenses, including aggravated assault, the prosecutor *may* refer the petition requesting adjudication as a delinquent to the grand jury. *Id.* § 53.045(a)(6) (emphasis added). If the grand jury approves the submitted petition by a vote of nine, just as with an indictment, the approval is certified to the juvenile court and entered into the record. *Id.* § 53.045(b), (d). If the prosecutor refers the petition to the grand jury, the grand jury approves the petition, and the grand jury's approval is certified to the juvenile court and filed in the juvenile court's record, the juvenile court may impose a determinate sentence. *See Matter of S.J.*, 977 S.W.2d 147, 149 (Tex. App.—San Antonio 1998, no pet.) (citing sections 53.045(a), (d) and 54.04(d)(3) of the Texas Family Code). However, if the prosecutor does not obtain and file the grand jury's certification, the juvenile court is without jurisdiction to impose a determinate sentence. *Id.* (citing section 54.04(d)(2), (3) of the Texas Family Code). Only if all the requirements are met may the court impose a determinate sentence; it is only then that the State's petition is deemed an indictment for purposes of later transferring the juvenile to Texas Department of Criminal Justice-Institutional Division or the parole board. *Matter*

*of S.J.*, 977 S.W.2d at 149 (citing section 53.045(d)); *see also* TEX. HUM. RES. CODE ANN. § 61.084(a), (c) (Vernon Supp. 2009) (stating that if person is committed to Texas Youth Commission pursuant to determinate sentence under section 54.04(d)(3) of Family Code, Commission may not discharge person from custody, rather it must transfer person to Texas Department of Criminal Justice-Institutional Division for completion of sentence).

Clearly, the decision to refer the petition to the grand jury is at the State's option, and if the State never refers the petition, the trial court has no jurisdiction to order determinate sentencing. *Matter of S.J.*, 977 S.W.2d at 149 (citing section 54.04(d)(2), (3) of the Texas Family Code). In this case, the State chose not to refer the petition; rather, the State chose to seek a waiver of jurisdiction and transfer to criminal district court, as was its right. Therefore, contrary to Bleys's assertion, the trial court did not have the option of imposing determinate sentencing so as to provide Bleys with the rehabilitation needed and to protect the community welfare. *See id.* Moreover, Bleys has not cited any authority to support his suggestion that the juvenile court could somehow force the State to refer its petition for adjudication to the grand jury. The statute clearly gives the State the option of referral without interference from the trial court. *See* TEX. FAM. CODE ANN. § 53.045(a).

Because Bleys's only argument is that the trial court ignored the option of determinate sentencing, rendering its findings on rehabilitation and community welfare factually insufficient, we must overrule his contention because as demonstrated above, determinate sentencing was not an option available to the trial court. The trial court was, in fact, without jurisdiction to impose a

determinate sentence.  Accordingly, we overrule Bleys's point of error and affirm the trial court's judgment.

Marialyn Barnard, Justice

PUBLISH