**Opinion filed August 8, 2024**



In The

# Eleventh Court of Appeals

_____

## No. 11-24-00093-CV
_____

## IN THE MATTER OF J.A.G., A JUVENILE

**On Appeal from the County Court at Law**
**Ector County, Texas**
**Trial Court Cause No. 6283**

### M E M O R A N D U M   O P I N I O N

This is an accelerated appeal from an order in which the county court at law, sitting as a juvenile court, waived its jurisdiction over J.A.G., Appellant, and transferred the cause to an appropriate district court for criminal proceedings. *See* TEX. FAM. CODE ANN. § 54.02 (West 2022), § 56.01(c)(1)(A), (h), (h-1) (West Supp. 2023). In his sole issue on appeal, Appellant asserts that the juvenile court abused its discretion when it waived its jurisdiction over Appellant and signed its transfer order because, he contends, the record does not support the juvenile court's finding that the juvenile justice system could not adequately protect the welfare of the

community. Specifically, Appellant takes issue with the factor enumerated in Section 54.02(f)(4) of the Family Code that a juvenile court considers in making its determination under Section 54.02(a). We affirm.

## I. *Standard of Review and Applicable Law*

Courts that are designated as juvenile courts have original and exclusive jurisdiction over juvenile proceedings. *See* FAM. §§ 51.04, 54.02. "But the right of a juvenile offender to remain outside of the jurisdiction of the criminal district court is not absolute." *Bell v. State*, 649 S.W.3d 867, 885 (Tex. App.—Houston [1st Dist.] 2022, pet. ref'd). "A juvenile court may waive its exclusive original jurisdiction and transfer a juvenile case to the appropriate district court for criminal proceedings if certain statutory and constitutional requirements are met." *Ex parte Thomas*, 623 S.W.3d 370, 372 (Tex. Crim. App. 2021). A juvenile court's transfer of a juvenile offender from its court to an appropriate district court or a criminal district court for prosecution as an adult "should be regarded as the exception, not the rule; the operative principle is that, whenever feasible, children and adolescents below a certain age should be 'protected and rehabilitated rather than subjected to the harshness of the criminal system.'" *Id.* at 376 (quoting *Hidalgo v. State*, 983 S.W.2d 746, 754 (Tex. Crim. App. 1999)).

If a child was fourteen years of age or older at the time he is alleged to have committed a felony offense, a juvenile court may transfer the case filed against the child to an appropriate district court or a criminal district court for trial, even if the offender remains a child, by age, at the time of transfer. FAM. § 54.02(a); *see Thomas*, 623 S.W.3d at 377. Pursuant to Section 54.02(a), the juvenile court may waive its exclusive original jurisdiction and transfer a juvenile case to the appropriate district court or criminal district court for criminal proceedings if:

> (1) the child is alleged to have violated a penal law of the grade of felony;

(2) the child was:

    (A) 14 years of age or older at the time he is alleged to have committed the offense, if the offense is . . . a felony of the first degree, and no adjudication hearing has been conducted concerning that offense; or

    (B) 15 years of age or older at the time the child is alleged to have committed the offense, if the offense is a felony of the second or third degree or a state jail felony, and no adjudication hearing has been conducted concerning that offense; and

(3) after a full investigation and a hearing, the juvenile court determines that there is probable cause to believe that the child before the court committed the offense alleged and that because of the seriousness of the offense alleged or the background of the child the welfare of the community requires criminal proceedings.

FAM. § 54.02(a).

"The State has the burden to persuade the juvenile court by a preponderance of the evidence that the welfare of the community requires [the] transfer of jurisdiction for [the child's] criminal proceedings, either because of the seriousness of the offense alleged or the background of the child or both." *Bell*, 649 S.W.3d at 886. In deciding whether the preponderance of the evidence supports Section 54.02(a)'s third requirement, the juvenile court shall consider the following non-exhaustive factors:

(1) whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against the person;

(2) the sophistication and maturity of the child;

(3) the record and previous history of the child; and

(4) the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court.

FAM. § 54.02(f). These factors are designed to facilitate the juvenile court's balancing of the potential danger the juvenile offender poses to the public with the juvenile's amenability to treatment. *Bell*, 649 S.W.3d at 886. Any combination of these factors may suffice to support a waiver of jurisdiction and transfer. *In re X.S.*, 659 S.W.3d 477, 484 (Tex. App.—Texarkana 2022, no pet.).

We utilize a two-part test in reviewing a juvenile court's decision to waive its exclusive original jurisdiction and transfer the case. First, we review the juvenile court's specific findings of fact under the traditional evidentiary sufficiency review standard. *Bell*, 649 S.W.3d at 887; *In re W.J.G.L.*, No. 11-24-00020-CV, 2024 WL 3362941, at *2 (Tex. App.—Eastland July 11, 2024, no pet. h.) (mem. op.); *In re A.K.*, No. 02-20-00410-CV, 2021 WL 1803774, at *18 (Tex. App.—Fort Worth May 6, 2021, pet. denied) (mem. op.) (citing *In re C.M.M.*, 503 S.W.3d 692, 701 (Tex. App.—Houston [14th Dist.] 2016, pet. denied)). "In reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the juvenile court's findings and disregard contrary evidence unless a reasonable fact finder could not reject it." *Bell*, 649 S.W.3d at 887. "If there is more than a scintilla of evidence to support the findings, then the evidence is legally sufficient." *Id.* "Under a factual sufficiency challenge, we consider all the evidence presented to determine if the juvenile court's findings are against the great weight and preponderance of the evidence so as to be clearly wrong and unjust." *X.S.*, 659 S.W.3d at 484 (quoting *In re T.C.*, No. 06-21-00075-CV, 2022 WL 398419, at *3 (Tex. App.—Texarkana Feb. 10, 2022, no pet. (mem. op.)); *see In re Z.T.*, No. 05-21-00138-CV, 2021 WL 3645103, at *8 (Tex. App.—Dallas Aug. 17, 2021, pet. denied) (mem. op.) ("[W]e may review the entire record to determine whether the facts elicited sufficiently support the juvenile court's stated reason or reasons for the transfer.").

Second, we review the juvenile court's waiver decision for an abuse of discretion. *Bell*, 649 S.W.3d at 887 (citing *In re C.C.C.*, No. 13-21-00371-CV, 2022 WL 710143, at *8 (Tex. App.—Corpus Christi–Edinburg Mar. 10, 2022, no pet.) (mem. op.)). "A juvenile court abuses its discretion when its transfer decision is essentially arbitrary, given the evidence upon which it was based." *Id.* (citing *In re Z.M.*, No. 02-21-00213-CV, 2021 WL 4898851, at *2 (Tex. App.—Fort Worth Oct. 21, 2021, no pet.) (mem. op.)). "By contrast, a waiver decision representing 'a reasonably principled application of the legislative criteria' generally will pass muster under the abuse-of-discretion standard of review." *Id.* (quoting *Z.M.*, 2021 WL 4898851, at *2).

## II. *Factual and Procedural History*

The State alleges that Appellant committed a felony offense on or about December 28, 2022, and that he was sixteen when the offense was committed. *See* FAM. § 54.02(a)(2). Because of Appellant's age when the offense was allegedly committed, the underlying proceeding was filed in juvenile court. While this case was pending in the juvenile court, Appellant was in the custody of the Texas Juvenile Justice Department (TJJD) for parole violations, which included his possession of a weapon in El Paso following the commission of the underlying alleged offense. On March 2, 2023, the State filed a petition for discretionary transfer to a criminal district court. On February 20, 2024, the State filed its first amended petition for discretionary transfer, and the juvenile court subsequently conducted a transfer hearing on March 6, 2024. Appellant was seventeen at the time the juvenile court conducted the transfer hearing.

At the transfer hearing, Odessa Police Department (OPD) Detective Lauren Gonzales testified that OPD officers responded to a welfare check for Maurice Rogers at his residence on December 28, 2022. Upon their arrival, OPD officers discovered Rogers's body in a bedroom with a single gunshot wound to the left side

of his neck; Detective Gonzales stated that she also observed bullet holes in the front of Rogers's residence. Based on her observations of the crime scene, Detective Gonzales concluded that Rogers was shot in his living room before he moved to a bedroom and collapsed. A medical professional at the Ector County morgue examined Rogers's body and confirmed that the cause of Rogers's death was a gunshot wound to his neck.

During their investigation, OPD officers recovered shell casings from the crime scene, which indicated that two different 9mm pistols were discharged during the shooting; however, Detective Gonzales stated that law enforcement did not recover the firearms that were used in the shooting. Detective Gonzales obtained two surveillance camera videos which depicted two individuals discharging firearms in the direction of Rogers's residence at approximately 10:00 p.m. the night before Rogers's body was found. Detective Gonzales testified that, at some point during their investigation, law enforcement identified Harvey Gutierrez, Appellant's adult codefendant, as the owner of the vehicle as shown in the second video that they retrieved. After speaking to Gutierrez, Detective Gonzales testified that Gutierrez told her that Appellant had discharged a firearm at Rogers's residence and that Appellant was involved in the resulting offense. Detective Gonzales also spoke to other witnesses who informed her about Appellant's involvement in the offense, and she stated that these witnesses' statements were further corroborated by other evidence recovered during their investigation.

Based on the evidence and information that Detective Gonzales accumulated in her investigation, she believed that probable cause existed to show that Appellant was involved in Rogers's killing. Detective Gonzales obtained a warrant for Appellant's arrest, and on December 30, 2022, law enforcement officers apprehended and arrested Appellant, along with another adult codefendant, in El Paso, Texas. Appellant was initially detained in the El Paso County Juvenile

Detention Center and thereafter transported to the Ector County Juvenile Detention Center on January 5, 2023.

Prior to the transfer hearing, the Ector County Juvenile Probation Department (the Department) prepared a Diagnostic Study, Social Evaluation, and Investigation report for the juvenile court, which was admitted at the hearing. At the hearing, Maria Sosa, the deputy director for the Department, discussed the Department's findings as stated in the report.

Regarding Appellant's criminal history, Sosa testified that Appellant first became involved with the Department when Appellant received a supervisory caution for a criminal mischief charge when he was twelve. Later, in 2018, Appellant was referred to the Department for the misdemeanor offense of possession of marihuana, and he was assigned voluntary probation. Within six months of this possession charge, in May 2019, Appellant escaped from custody.

In August 2019, Appellant was referred to the Department due to multiple offenses that occurred on the same day: two aggravated robberies, evading arrest and detention with a motor vehicle, unauthorized use of a motor vehicle, and evading arrest or detention on foot. As a result of the August 2019 offenses, Appellant was placed in a "long-term program" with the Department. Due to COVID-19, Appellant was released early from this placement, placed on "parole supervision," and returned to the community; shortly thereafter, in June 2020, Appellant violated his parole because of "violations which involved weapons." As a consequence, Appellant's probation was revoked, and he was committed to TJJD for the first time; he was later released on parole supervision. Sosa testified that, in 2022, Appellant was charged with unlawful carrying of a weapon and possession of marihuana; as a result, Appellant was committed to TJJD for a second time. According to Sosa, Appellant was recently recommitted to TJJD because of violations related to the alleged offense in this case and his possession of a firearm.

7

Sosa testified that the Department used all available resources to address Appellant's issues in an effort to prevent Appellant from reoffending. She testified that, at this stage, the Department did not have rehabilitative resources available for a juvenile who was charged with this type of offense, and that the Department had no available means to protect the public in such cases. Sosa stated that, based on the Positive Achievement Change Tool (PACT) full-screen summary report dated January 12, 2023, the Department's assessment was that Appellant had a "moderate" risk to reoffend. Within the PACT report, it is noted that Appellant had a criminal history score of twenty-one, which was "high," and social history score of five, which was "low."

Sosa also testified that the Department's report included a diagnostic study of Appellant performed by a psychologist, Dr. Perry M. Marchioni. Dr. Marchioni opined that Appellant had a rational understanding of the seriousness of the charges pending against him and exhibited no cognitive functioning deficiencies or intellectual disabilities that would impair his ability to understand the courtroom procedures or to assist his trial counsel. Dr. Marchioni's diagnostic impressions included a determination that Appellant suffered from adolescent onset conduct disorder as well as a disruptive mood dysregulation disorder, and he noted that Appellant should be considered mentally ill and would benefit from his continuous use of mood stabilizers. Dr. Marchioni also concluded that Appellant was an appropriate candidate for transfer to a criminal district court based on his assessment of Appellant's intellectual and cognitive functioning and because Appellant's "background and history [were] suggestive of an individual who is [a] high risk to reoffend."

The juvenile court also heard testimony from Appellant's mother and cousin. Appellant's cousin testified that Appellant was receiving "help" at TJJD and that it was "working for him." Appellant's mother testified about Appellant's history with

Child Protective Services (CPS). She testified that while Appellant received some counseling in the past through CPS, these services "[were not] enough for him to just be able to open up [to] everything that's going on now." She believed that Appellant's behavior, such as committing the aggravated robberies, was caused by the failure to treat Appellant's past trauma. Based on her interactions with Appellant, she believed that Appellant was currently receiving services at TJJD, that these services were helping Appellant, and that TJJD had adequate services, personnel, and assets to provide the necessary services to Appellant on a long-term basis.

Following the transfer hearing, the juvenile court waived its jurisdiction and ordered the transfer of Appellant to a criminal district court for criminal proceedings. The juvenile court found (1) probable cause to believe that Appellant committed the felony offense alleged by the State that occurred on December 28, 2022, by recklessly causing the death of Rogers by discharging a firearm into his residence, (2) that Appellant was sixteen years old at the time of the offense, and (3) that the other statutory requirements for certification and transfer had been met. *See* FAM. § 54.02(a).

In its transfer order, the juvenile court addressed the four factors enumerated in Section 54.02(f), stated the specific reasons and findings in support of its decision to waive jurisdiction, and concluded that: (1) Appellant's alleged offense was an offense against a person; (2) Appellant had the appropriate maturity and sophistication for a juvenile of his age; (3) Appellant had ten prior referrals to the Department; and (4) the public could not be protected if it retained jurisdiction due to the serious nature of Appellant's alleged offenses, and the juvenile court, its officers, and the facilities available in the juvenile justice system could not rehabilitate Appellant at this advanced stage of his criminal activities. *See* FAM. § 54.02(f).

### III. *Analysis*

In his sole issue, Appellant contends that the juvenile court erred when it waived jurisdiction over Appellant and transferred this case to a criminal district court because "the record does not support the finding that Appellant remaining in the juvenile justice system would not adequately protect the welfare of the community." *See* FAM. § 54.02(a)(3), (f)(4). In support, Appellant asserts that "the only [requirement] at issue in this case is that of Section 54.02(f)(4)." We therefore construe Appellant's complaint as a challenge to the sufficiency of the evidence to support the juvenile court's finding as to the factor described in Section 54.02(f)(4)—the ability to protect the public. Further, we note that Appellant does not challenge the juvenile court's probable cause determination or its analysis of the first three factors enumerated in Section 54.02(f) on appeal. FAM. § 54.02(f)(1–3).[1]

In its order waiving jurisdiction, and its oral pronouncements, the juvenile court stated the specific reasons and findings in support of its decision and concluded that (1) the public could not be protected if jurisdiction was retained due to the serious nature of Appellant's alleged offenses, and (2) the procedures, services, and facilities currently available could not rehabilitate Appellant due to the advanced stage of his criminal activities. Despite the juvenile court's findings under Section 54.02(f)(4), Appellant contends that sufficient resources exist within the juvenile justice system to ensure the safety of the community because (1) Sosa's testimony regarding the services available to Appellant at TJJD shows that "[Appellant's] time in TJJD had improved due to [him] receiving counseling and

---

[1]Nevertheless, if Appellant had raised such a challenge on appeal, we would conclude that legally and factually sufficient evidence supports the juvenile court's finding that probable cause exists to believe that Appellant committed the alleged offense against Rogers. *See* FAM. § 54.02(a)(3); *see Matter of C.M.M.,* 503 S.W.3d 692, 703 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).

other services;" and (2) the testimony of Appellant's mother and cousin shows that Appellant "was making significant progress in addressing [his] past trauma in order to move forward while [he was] placed at TJJD."[2] In response, the State argues that sufficient evidence was presented to support the juvenile court's waiver of jurisdiction and transfer decision. Based on our review of the record, we conclude that sufficient evidence supports the juvenile court's Section 54.02(f)(4) findings, and that the juvenile court did not abuse its discretion when it waived its jurisdiction over Appellant and transferred the cause to a criminal district court.

Here, the evidence shows that the waiver and transfer were necessary to protect the public from Appellant and that previous attempts to rehabilitate him through the juvenile justice system had failed. *See In re A.F.*, No. 11-20-00199-CV, 2021 WL 687294, at *5 (Tex. App.—Eastland Feb. 23, 2021, no pet.) (mem. op.). Appellant was charged with a serious, violent, felony offense and he committed this offense while on parole supervision for a previous offense that also occurred in 2022. *See Bell*, 649 S.W.3d at 897 ("[T]he juvenile court may consider the serious nature of the offense committed by the child . . . in determining whether the protection of the public and the likelihood that the child can be rehabilitated weigh in favor of transfer."). This is undisputed.

The record also shows that Appellant's criminal behavior continued to escalate since his first referral to the Department in 2018. At the transfer hearing, the juvenile court found that Appellant had been referred to the Department on ten occasions, seven of which occurred after 2019. Sosa testified that since Appellant was charged with aggravated robbery in 2019, he has increasingly used and

---

[2]Appellant also contends that Sosa's testimony regarding her knowledge of the TJJD programs available to Appellant and her knowledge of Appellant's progress in these programs was "very limited." While Appellant does provide a record cite in his brief, Appellant does not cite to any authority in support of his contention, nor does he articulate how Sosa's "limited" knowledge affects the juvenile court's determination under Section 54.02(f)(4) or how this fact relates to his argument that the juvenile court abused its discretion when it waived jurisdiction over Appellant.

possessed firearms. We conclude that Appellant's escalating criminal behavior, as well as his frequent possession and use of firearms, which includes his most recent violent felony offenses involving a firearm, support the juvenile court's determination that the juvenile justice system could not adequately protect the public. *See Matter of G.B.*, 524 S.W.3d 906, 920 (Tex. App.—Fort Worth 2017, no pet.) (holding that the continued escalation of a juvenile's criminal behavior supported the juvenile court's finding that the public could not be adequately protected). As such, this factor weighs in favor of transfer.

Appellant argues that the testimony of his mother, cousin, and Sosa indicates that Appellant was addressing some of his past "trauma" through services provided by TJJD and that sufficient resources exist within the juvenile justice system to ensure the safety of the community. However, and despite this testimony, other evidence in the record shows that there was minimal likelihood that the public would be adequately protected or that Appellant would be rehabilitated "by [the] use of procedures, services, and facilities currently available to the juvenile court." *See* FAM. § 54.02(f)(4).

At the transfer hearing, Sosa testified that the Department used all available resources to address Appellant's issues and to prevent Appellant from reoffending. Despite the Department's efforts, Sosa testified that Appellant's behavior had not improved since he was first committed to TJJD in 2020, and that Appellant continued to be involved in criminal activities and use firearms. As a result of his escalating behavior, Appellant was thrice committed to TJJD. When Sosa was questioned by counsel for the State concerning Appellant's behavior while at TJJD, Sosa stated that she knew that Appellant had been "extended a couple of times due to his behavior." While Sosa testified that she did not know the "details" of these extensions, she stated that she understood that extensions are usually a result of a juvenile's "negative behaviors." The PACT report—which states that Appellant had

been involved in several fights while he was committed at TJJD—corroborates her testimony. The juvenile court was permitted to consider this evidence in its transfer determination. *See In re T.B.*, No. 14-23-00346-CV, 2023 WL 6632982, at * 6–7 (Tex. App.—Houston [14th Dist.] Oct. 12, 2023, no pet.) (mem. op.).

The Department's prior attempts at rehabilitative measures and the violent nature of Appellant's criminal behavior support the juvenile court's finding that the juvenile justice system could not rehabilitate Appellant due to the advanced stage of his criminal activities. *See In re K.J.*, 493 S.W.3d 140, 154 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (holding that a juvenile's increasingly violent nature both inside and outside TJJD is a consideration within the fourth factor of Section 54.02(f)). As such, this factor weighs in favor of transfer.

While Sosa testified that Appellant's risk of reoffending as stated in the PACT report had decreased from "high" to "moderate" while Appellant was in TJJD custody, Sosa stated that this decrease was because Appellant was confined in a secure facility—not, as Appellant contends, because Appellant was receiving counseling and other services. The PACT report states that Appellant had a criminal history score of twenty-one, which is considered "high," and that his overall risk to reoffend was "moderate." According to Dr. Marchioni, he believed that Appellant's "background and history was suggestive of an individual who is a high risk to reoffend." Sosa also testified that (1) the Department does not have an adequate program for the alleged offense, (2) the Department did not have the means available to rehabilitate a juvenile charged with such an offense, and (3) the Department had no means to protect the public in cases where a juvenile is charged with such an offense. Moreover, in the Department's report, Sosa recommended that the juvenile court waive its jurisdiction and transfer the case to a criminal district court due to "the seriousness of the alleged offense against a person, the prospects of adequate

protection of the public and the likelihood of rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court."

The juvenile court, as the sole judge of witness credibility and the weight to be afforded each witness's testimony, was free to believe—and to determine the value of—Sosa's testimony, Dr. Marchioni's diagnostic study and opinions, and the Department's report, which indicate that Appellant is likely to reoffend and that he is a danger to the public. *See Matter of T.S.*, No. 02-20-00353-CV, 2021 WL 733305, at *8 (Tex. App.—Fort Worth Feb. 25, 2021, no pet.) (mem. op.) (recognizing that, "as the factfinder, the juvenile court's role was to evaluate the witnesses, judge their credibility, determine who to believe or disbelieve, and weigh the evidence and any inconsistencies"). Given the evidence presented, the juvenile court could have rationally concluded that the services available to it were inadequate to protect the public.

Furthermore, Appellant was seventeen at the time of the transfer hearing, which left him only a short period—less than two years—of access to the juvenile justice system's available resources for rehabilitative efforts. *See In re Z.T.*, No. 05-21-00138-CV, 2021 WL 3645103, at *13 (Tex. App.—Dallas Aug. 17, 2021, pet. denied) (mem. op.) (the age of the child at the time of the transfer hearing is particularly relevant to the fourth factor). As such, the juvenile court could have reasonably concluded that the limited amount of time that Appellant had available to participate in programs would be inadequate to protect the public and rehabilitate him. *See T.B.*, 2023 WL 6632982, at *7 (citing *Faisst v. State*, 105 S.W.3d 8, 12–15 (Tex. App.—Tyler 2003, no pet.)).

Applying the traditional evidentiary sufficiency standards of review previously set forth, we hold that the juvenile court's findings under Section 54.02(f)(4) are supported by legally and factually sufficient evidence. Moreover, we cannot say that the juvenile court acted arbitrarily or without reference

to guiding rules or principles when it waived its jurisdiction and transferred Appellant to a criminal district court for adult criminal proceedings. *See X.S.*, 659 S.W.3d at 484 (holding that the factors in Section 54.02(f) are nonexclusive and that any combination of these factors may suffice to support a waiver of jurisdiction and transfer). The juvenile court's decision to waive jurisdiction and certify Appellant as an adult was rationally based on the seriousness of the offense alleged, in addition to Appellant's background, sophistication, maturity, and the lack of resources available to him through the juvenile justice system. Therefore, we conclude that the juvenile court did not abuse its discretion when it waived its jurisdiction and transferred Appellant's case to a criminal district court.

We overrule Appellant's sole issue on appeal.

IV. *This Court's Ruling*

We affirm the order of the juvenile court.


W. STACY TROTTER

JUSTICE


August 8, 2024

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.