PD-0640-15

COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 5/29/2015 10:49:26 AM
Accepted 6/1/2015 1:55:00 PM
ABEL ACOSTA
CLERK

NO. _____

IN THE

COURT OF CRIMINAL APPEALS

OF TEXAS

_____

JOHN GONZALES, III,
Appellant

vs.

THE STATE OF TEXAS

_____

Petition in Cause No. 2013-CR-7917
From the 386th District Court of Bexar County, Texas,
And Appeal No. 04-14-00352-CR
From the Court of Appeals for the
Fourth Court of Appeals District of Texas

_____

PETITION FOR DISCRETIONARY REVIEW
_____

**ORAL ARGUMENT REQUESTED**

FILED IN
COURT OF CRIMINAL APPEALS

June 1, 2015

ABEL ACOSTA, CLERK

**MICHAEL D. ROBBINS**
**Assistant Public Defender**
**Paul Elizondo Tower**
**101 W. Nueva, Suite 310**
**San Antonio, Texas 78205**
**(210) 335-0701**
**Fax (210) 335-0707**
**mrobbins@bexar.org**
**Bar No. 16984600**

**ATTORNEY FOR**
**APPELLANT**

i

## Identity of Parties and Counsel

Pursuant to TEX. R. APP. P. 38.1(a), the parties to this suit are as follows:

(1)    **John Gonzales, III,** TDCJ #01927323, Gib Lewis Unit, 777 F.M. 3497, Woodville, Texas 75990, is the appellant and was the defendant in trial court.

(2)    The **State of Texas**, by and through the Bexar County District Attorney's Office, Paul Elizondo Tower, 101 W. Nueva St., San Antonio, Texas 78205, is the appellee and prosecuted this case in the trial court.

The trial attorneys were as follows:

(1)    John Gonzales, III, was represented by **Tony Jimenez, III,** and **Cathy Valenzuela**, 214 Dwyer Ave, Suite 315, San Antonio, Texas 78204.

(2)    The State of Texas was represented by **Susan D. Reed** (succeeded by **Nicholas Lahood**)**,** District Attorney, and **Rose Zebell, Jill Mata,** and **Letty Cortez,** Assistant District Attorneys, 235 E. Mitchell Rd., San Antonio, Texas 78210. Ms. Mata has since become the Texas Juvenile Justice Department General Counsel, P.O. Box 12757, Austin, Texas 78711.

The appellate attorneys are as follows:

(1)     John Gonzales, III, is represented by **Michael D. Robbins**, Assistant Public Defender, Paul Elizondo Tower, 101 W. Nueva St., Suite 310, San Antonio, Texas 78205.

(2)     The State of Texas is represented by the **Nathan Morey**, Assistant District Attorney, Appellate Division, Paul Elizondo Tower, 101 W. Nueva St., Suite 710, San Antonio, Texas 78205.

The trial judge was **Hon. Laura Parker**, 386th District Court, 235 E. Mitchell Rd., San Antonio, Texas 78210.

The Fourth Court of Appeals decided this case in a panel consisting of **Hon. Patricia O. Alvarez, Hon. Luz Alena D. Chapa,** and **Hon. Jason Pulliam,** Associate Justices, Fourth Court of Appeals, Cadena-Reeves Justice Center, 300 Dolorosa St., Suite 3200, San Antonio, Texas 78205. The opinion was written by **Hon. Patricia O. Alvarez**

# Table of Contents

                Page

Identities of Parties and Counsel . . . . . . . ii

Table of Contents . . . . . . . . . . iv

Index of Authorities . . . . . . . . . v

A Note Regarding Record References . . . . . . . vi

Introduction . . . . . . . . . . . 1

Statement Regarding Oral Argument . . . . . . . 1

Statement of the Case . . . . . . . . . 1

Statement of Procedural History . . . . . . . 2

Ground for Review . . . . . . . . . 2

## GROUND FOR REVIEW

The court of appeals erred when it found that the juvenile court's order of waiver and transfer to criminal court was sufficient, because the order was generic boilerplate and was not case-specific, as required by *Moon v. State*, 451 S.W.3d 28 (Tex. Crim. App. 2014).

Argument . . . . . . . . . . . 3

Prayer for Relief . . . . . . . . . . 12

Certificate of Service . . . . . . . . . 13

Word Count Certification. . . . . . . . . 13

Appendix . . . . . . . . . . . 14

# Index of Authorities

                                                                    Page

## Statutes

TEX. CODE CRIM. PROC. art. 44.47  .  .  .  .  .  .  .  3,6

TEX. FAM. CODE § 54.02 .  .  .  .  .  .  .  .  *passim*

TEX. FAM. CODE § 56.02 .  .  .  .  .  .  .  .  .  6

TEX. PENAL CODE § 19.02  .  .  .  .  .  .  .  .  3

## Rules

TEX. R. APP. P. 9.4 .  .  .  .  .  .  .  .  .  .  vi

TEX. R. APP. P. 9.5 .  .  .  .  .  .  .  .  .  .  13

TEX. R. APP. P. 38.1  .  .  .  .  .  .  .  .  .  ii

TEX. R. APP. P. 66.3  .  .  .  .  .  .  .  .  .  4

TEX. R. APP. P. 68.2  .  .  .  .  .  .  .  .  .  2

TEX. R. APP. P. 68.11  .  .  .  .  .  .  .  .  .  13

## Cases

*Bleys v. State*, 319 S.W.3d 857 (Tex. App. – San Antonio 2010, no pet.)  .  11

*Faisst v. State*, 105 S.W.3d 7 (Tex. App. – Tyler 2003, no pet.)  .  .  .  7

*Gonzales v. State*, No. 04-14-00352-CR, 2015 Tex. App. LEXIS 4571 (Tex. App. – San Antonio May 6, 2015, pet. filed)(designated for publication)  .  .  .  .  .  .  .  .  .  .  .  .  *passim*

*Moon v. State*, 452 S.W.3d 28 (Tex. Crim. App. 2014)  .  .  .  *passim*

## A Note Regarding Record References

In this brief, references to the six-volume reporter's record will be thus: (RR 3, 45); and to the clerk's record will be thus: (CR, ___).

TO THE COURT OF CRIMINAL APPEALS OF TEXAS:

John Gonzales, III petitions this Honorable Court to review the judgment affirming his conviction for murder in Cause No. 2013-CR-7917.

## Statement Regarding Oral Argument

The Appellant, John Gonzales, III, requests oral argument before the Court of Criminal Appeals of Texas, because oral argument will assist the Court in determining whether the court of appeals erred when it determined that the order of waiver of juvenile jurisdiction and transfer to criminal court was sufficiently detailed in light of this Honorable Court's opinion in *Moon v. State*, 451 S.W.3d. 28 (Tex. Crim. App. 2014).

## Statement of the Case

The Appellant was charged as a juvenile with the offense of murder. The juvenile court waived its jurisdiction and transferred the case to criminal court. Appellant was indicted for capital murder. He pleaded *nolo contendere* to the reduced charge of murder under a plea bargain, and was sentenced by the trial court to 20 years in the Texas Department of Criminal Justice. The Court of Appeals for the Fourth Court of Appeals District of Texas affirmed the judgment and sentence, on May 6, 2015, in an opinion designated for publication.

1

## Statement of Procedural History

A three-justice panel of the court of appeals rendered its opinion on May 6, 2015. *Gonzales v. State*, No. 04-14-00352-CR, 2015 Tex. App. LEXIS 4571 (Tex. App. – San Antonio May 6, 2015, pet. filed)(designated for publication). No motion for rehearing was filed by Appellant. Pursuant to Rule 68.2(a) of the Texas Rules of Appellate Procedure, this petition is e-filed with the clerk of the Court of Criminal Appeals within thirty (30) days after the judgment of the Court was rendered, on May 27, 2015.

## Ground for Review

The court of appeals erred when it found that the juvenile court's order of waiver and transfer to criminal court was sufficient, because the order was generic boilerplate and was not case-specific, as required by *Moon v. State*, 451 S.W.3d 28 (Tex. Crim. App. 2014).

**<u>Argument</u>**

**Introduction.**

This criminal case began as a juvenile case.  On September 26, 2012, the State filed a petition for waiver of jurisdiction and discretionary transfer to criminal court in Cause No. 2012-JUV-01569, charging John Gonzales, III, with murder.[1] (CR, 6-7). The case proceeded to certification hearing on the State's petition. Following a contested hearing, the juvenile court waived its jurisdiction and transferred this case to criminal court.  (CR, 19-24; RR 2, 80-81).

Mr. Gonzales was subsequently indicted for capital murder, in Cause No. 2013-CR-7917. (CR, 32). Appellant pleaded no contest to the reduced charge of murder, with a plea bargain recommending a cap of 20 years. (CR, 73; RR 4, 7). The trial court sentenced Mr. Gonzales to 20 years' imprisonment. (CR, 99-100; RR 5, 84).  The trial court correctly certified that this is a plea bargained case but that Mr. Gonzales has the right to appeal pretrial orders.  (CR, 101).[2] Mr. Gonzales timely filed notice of appeal. (CR, 105-1106).

**Reasons for granting review.**

In finding that the order of transfer was sufficient under *Moon v. State*, the court of appeals has decided an important question of state law in a way that

---

[1] TEX. PENAL CODE §§ 19.02(b)(1) & (b)(2).

[2] He has the right to appeal the certification and transfer order by virtue of TEX. CODE CRIM. PROC. art. 44.47(b).

3

conflicts with an applicable decision of the Court of Criminal Appeals. TEX. R. APP. P. 66.3(c). Furthermore, the decision of the court of appeals apparently expanded the limits of *Moon v. State*, which is such a recent case that those limits have not been interpreted by this Honorable Court. Therefore, the court of appeals has decided an important question of state law that has not been, but should be, settled by the Court of Criminal Appeals. TEX. R. APP. P. 66.3(a).

**The salient facts.**

This petition concerns the hearing and order waiving juvenile jurisdiction and transferring this case to adult court. Therefore, the statement of facts in the petition will limit itself only to the facts salient to this ground for review.

On September 26, 2012, the State filed its original petition for waiver of jurisdiction and discretionary transfer to criminal court, in Cause No. 2012-JUV-01569. The petition alleged that John Gonzales, III, was 16 years of age, having been born on August 27, 1996. It further alleged that on or about August 13, 2012, Mr. Gonzales committed the offense of murder against James Whitley. The petition sought transfer to criminal court pursuant to TEX. FAM. CODE § 54.02(a). (CR, 6-7). Mr. Gonzales was served with the petition and summons on October 2, 2012, and his parents were served on October 4, 2012. (CR, 10, 12, 13).

Pursuant to TEX. FAM. CODE § 54.02(d), the State requested a psychological examination, diagnostic study, social evaluation, and investigation of Mr.

Gonzales's circumstances, which was granted by the court. (CR, 8-9). The evaluation and report was prepared by Heather Holder, Psy.D., and was filed in the case. (CR, 14-18; RR 6, SX2). In addition, a discretionary transfer hearing report was prepared by Traci Geppert, a juvenile probation officer, and was duly filed in the case. (RR 6, SX1).

The certification and transfer hearing was held on October 19, 2012, in the 386th District Court of Bexar County, Texas, Hon. Laura Parker, presiding. (RR 2, 1). After hearing testimony and arguments, and considering the documents filed in the record of the case, the trial court waived its juvenile jurisdiction and transferred the case to criminal court. (CR, 19-24; RR 2, 80-81).

The salient facts underlying this appeal may be found in the Factual Background section of the court of appeals' opinion. *Gonzales v. State*, 2015 Tex. App. LEXIS 4571 at *1-*6.[3] Following the closing of testimony and argument of counsel, the trial court granted the State's motion to waive juvenile jurisdiction and transfer the case to criminal court. (CR, 19-24; RR 2, 80-81).

**The court of appeals' holding.**

Appellant filed his opening brief in this case on October 8, 2014, prior to this Honorable Court's opinion in *Moon v. State*. As a result of the *Moon* decision,

---

[3] The original slip opinion and signed judgment of the court of appeals is attached to this petition, but references to the opinion are to the LEXIS rendition.

Appellant re-formulated his argument in his reply brief, which was filed on January 15, 2015. The re-formulated argument was presented during oral arguments, and was accepted, if not sustained, by the court of appeals as Appellant's argument.

The court of appeals found that the trial court's finding, in its transfer order, were "substantially more case-specific than the findings analyzed in *Moon*." *Gonzales*, 2015 Tex. App. LEXIS 4571 at *15. Because it felt that the trial court's findings were specific as to Mr. Gonzales, the court of appeals overruled Appellant's argument that the evidence was insufficient to support the order of waiver and transfer. *Id.* at *15-*16.

**Appeal of a certification and transfer hearing.**

The procedures for a waiver of juvenile court jurisdiction and transfer of jurisdiction to adult court are set forth in Section 54.02 of the Texas Family Code. "On transfer of the person for criminal proceedings, the person shall be dealt with as an adult and in accordance with the Code of Criminal Procedure." TEX. FAM. CODE § 54.02(h). Accordingly, appeals of transfer hearings are not governed by TEX. FAM. CODE § 56.02. Instead, the appeal is governed by the criminal statutes, and must be filed only in conjunction with the appeal of an order of deferred adjudication or a conviction by the criminal court. TEX. CODE CRIM. PROC. art. 44.47(b).

"In order to transfer a juvenile to adult court, the court must find that (1) there is probable cause to believe that the juvenile committed the offense alleged in the petition, and (2) because of the seriousness of the offense alleged or the background of the child, the welfare of the community requires criminal prosecution." *Faisst v. State*, 105 S.W.3d 7, 11 (Tex. App. – Tyler 2003, no pet.)(citing TEX. FAM. CODE § 54.02(a)(3)).

Section 54.02(f) of the Family Code sets out the criteria which the court must consider: (1) whether the offense was against the person or property, with greater weight in favor of transfer given to offenses against the person; (2) the sophistication and maturity of the child; (3) the record and previous history of the child; and (4) the prospects of adequate protection of the public and the likelihood of rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court. The juvenile court must consider all of these factors, but it is not required to find the each factor is established by the evidence. *Faisst*, 105 S.W.3d at 11. Also, as long as each factor is considered, the court is not required to give each factor equal weight. *Id.* Finally, a court does not abuse its discretion in findings that the welfare of the community requires the transfer, based on the seriousness of the crime alone. *Id.*

**The *Moon* standard of review.**

This Honorable Court recently defined the proper standard of appellate review for waiver and transfer cases in *Moon v. State*, 451 S.W.3d 28 (Tex. Crim. App. 2014). "[I]n evaluating a juvenile court's decision to waive its jurisdiction, the appellate court should first review the juvenile court's specific findings of fact regarding the Section 54.02(f) factors under 'traditional sufficiency of the evidence review.'" *Id.* at 47. This may include both legal and factual sufficiency review. *Id.* at 44-45.

The appellate court should then review the juvenile court's ultimate waiver of jurisdiction under an abuse of discretion standard. "That is to say, in deciding whether the juvenile court erred to conclude that seriousness of the offense alleged and/or the background of the juvenile called for criminal proceedings for the welfare of the community, the appellate court should simply ask, in light of its own analysis of the sufficiency of the evidence to support the Section 54.02(f) factors and any other relevant evidence, whether the juvenile court acted without reference to guiding rules and principles. In other words, was its transfer decision essentially arbitrary, given the evidence upon which it was based, or did it represent a reasonably principled application of the legislative criteria?" *Id.* at 47.

This Court expressly disapproved of the tendency of trial courts to use boilerplate undetailed findings of fact. The trial court "should take pains to 'show

its work,' as it were, by spreading its deliberative process on the record, thereby providing a sure-footed and definite basis from which an appellate court can determine that its decision was in fact appropriately guided by the statutory criteria ….." *Id.* at 49. The statutory process is poorly served by a transfer order "so lacking in specifics that the appellate court is forced to speculate" about the trial court's reasons for transfer. *Id.* The reviewing court must therefore limit its sufficiency review to the facts the juvenile court expressly relied on, as required to be explicitly set out in its transfer order under Section 54.02(h). *Id.* at 50.

**The order of transfer in this case lacks specificity.**

The court of appeals addressed similar issues in this case. The court compared the waiver and transfer order in this case with the one in *Moon*, and found that the findings here was specific enough. *Gonzales*, 2014 Tex. App. LEXIS 4571 at *15. The court listed the 11 findings made in by the juvenile court in this case and found that they passed muster. *Id*. at *14-*15. Most of these findings were generic, and those which mentioned this particular case apparently filled in the blanks from a template form order.

Appellant contends that the intent of *Moon's* direction that the juvenile court to "show its work" was to have the case-specific, detailed reasons for transfer spread out in the transfer order. The court of appeals "showed its work" in *Gonzales*, by going into detail about the facts of this case which supported the

Section 54.02(f) factors. *Id.* at \*10-\*14. The trouble was that the juvenile court's transfer order did not go into nearly so much detail as the court of appeals.

The transfer order nowhere states that this was a planned robbery of a drug dealer which became a murder. *Id.* at \*10-\*11. Nowhere does the order state that the probation officer's meetings with Appellant and his family indicated to her that Appellant had a level of understanding of the case to support the finding that he was mature and sophisticated enough to justify the waiver. *Id.* at \*11. Nowhere does the order state that Dr. Heather Holder evaluated Mr. Gonzales and concluded that he had the requisite sophistication and maturity to be tried as an adult for murder. *Id.* Nowhere does the order reflect that Appellant's mother described her son as being very much in control. *Id.* at \*11-\*12.

The order of waiver is silent about Mr. Gonzales's prior juvenile and educational record. *Id.* at \*12. It is also silent regarding the letters in Appellant's favor written by personnel at his school. *Id.* There is nothing in the order about Mr. Gonzales's home situation. The order is silent about the fact that his mother thought he was home at the time of the incident. *Id.* at \*13. There is no mention in the order regarding Mr. Gonzales's health issues or his behavior in detention. *Id.* The order goes not mention that Ms. Geppert did not believe that the juvenile system or determinate sentencing would be prior, due to time constraints and the

seriousness of the case. *Id.* at \*13-\*14. Nor does it make mention of the positive factors in Traci Geppert's discretionary transfer hearing report. (RR 6, SX1).

Prior to *Moon*, it would have been sufficient for an appellate court to look at the case record and plug facts from that record into its discussion of the Section 54.02(f) factors. *C.f., Bleys v. State*, 319 S.W.3d 857, 858-60 (Tex. App. – San Antonio 2010, no pet.). However, *Moon* demands more. It demands "that a reviewing court should measure the sufficiency of the evidence to support the juvenile court's stated reasons for transfer by considering the sufficiency of the evidence to support the facts as they are *expressly* found by the juvenile court in its certified order." *Moon*, 451 S.W.3d at 49-50 (emphasis added). "The appellate court should *not* be made to rummage through the record for facts that the juvenile court *might* have found, given the evidence developed at the hearing, but did not include in its written transfer order." *Id.* at 50 (emphasis in original).

This demand was not met in the present case. Although the court of appeals "rummaged through" the record to justify its decision, the juvenile court did not "show its work." Accordingly, the meagre facts that were listed in the order of waiver and transfer did not support the order. The opinion of the court of appeals is directly in conflict with the opinion in *Moon*. The outer limits of this Court's opinion in *Moon* have not been defined, but the court of appeals has exceeded those limits, based on any rational reading of *Moon*.

11

## Prayer For Relief

For the reasons herein alleged, the court of appeals erred in overruling Appellant's First Point of Error in Appeal No. 04-14-00352-CR. Therefore, Appellant prays this Honorable Court grant this petition, order briefing, and upon reviewing the judgment entered below, vacate the judgment of the court of appeals, dismiss the criminal prosecution, and find that the case remains pending in the juvenile court. *Moon*, 451 S.W.3d at 52 n. 90.

Respectfully submitted,

/s/ *Michael D. Robbins*
MICHAEL D. ROBBINS
Assistant Public Defender
Paul Elizondo Tower
101 W. Nueva, Suite 310
San Antonio, Texas 78205
(210) 335-0701
Fax (210) 335-0707
mrobbins@bexar.org
Bar. No. 16984600
ATTORNEY FOR APPELLANT

12

**Certificate of Service**

I HEREBY CERTIFY that, pursuant to Rules 9.5 and 68.11 of the Texas Rules of Appellate Procedure, a true and correct copy of the above and foregoing Petition for Discretionary Review has been served by e-mail on Mr. Nathan Morey, Assistant District Attorney, Paul Elizondo Tower, 101 W. Nueva, Suite 710, San Antonio, Texas 78205; and has been sent by first-class U.S. mail to the State Prosecuting Attorney, P.O. Box 12405, Austin, Texas 78711; on this 29th day of May, 2015.

/s/ *Michael D. Robbins*
MICHAEL D. ROBBINS
Assistant Public Defender

**Word Count Certification of Compliance**

Pursuant to TEX. R. APP. P. 9.4(i)(3), the undersigned counsel certifies that the word count, from the beginning of the Argument until, but excluding, the signature block, is: 2,209, and that the total word count, excluding the opinion and judgment of the court of appeals, is 3,667. The Bexar County Public Defender's Office uses Word 2010.

/s/ *Michael D. Robbins*
MICHAEL D. ROBBINS
Assistant Public Defender

## **Appendix**

Opinion of the Court of Appeals for the Fourth Court of Appeals District of Texas, *John Gonzales, III v. State of Texas*, No. 04-14-00352-CR, 2015 Tex. App. LEXIS 4571 (Tex. App. – San Antonio May 6, 2015, pet. filed)(designated for publication).



# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-14-00352-CR

**JOHN GONZALES III**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 386th Judicial District Court, Bexar County, Texas
Trial Court No. 2013CR7917
Honorable Laura Parker, Judge Presiding

Opinion by: Patricia O. Alvarez, Justice

Sitting: Patricia O. Alvarez, Justice
Luz Elena D. Chapa, Justice
Jason Pulliam, Justice

Delivered and Filed: May 6, 2015

AFFIRMED

This case stems from an aggravated robbery resulting in the murder of James Whitley.

Appellant John Gonzales III was a juvenile at the time of the offense. Upon motion by the State,

the juvenile court waived jurisdiction and transferred the matter to criminal court. After

Gonzales's motion to suppress was denied, he entered a plea of guilty and was sentenced by the

trial court to twenty-years' confinement in the Institutional Division of the Texas Department of

Criminal Justice. On appeal, Gonzales contends the juvenile court erred in transferring jurisdiction

and the criminal court erred in denying his motion to suppress. We affirm the trial court's judgment.

## FACTUAL BACKGROUND

On August 13, 2012, David Estrada and Appellant Gonzales went to an apartment complex to purchase marijuana from James Whitley. Gonzales was fifteen-years-old at the time. Gonzales exchanged several phone calls with Whitley regarding the purchase of the marijuana. Before going to the apartment complex, Gonzales and Estrada decided to rob Whitley of the marijuana. Gonzales brought his Smith & Wesson .40 caliber semi-automatic firearm for purposes of the robbery.

Estrada and Gonzales were driven to the apartment complex by a third individual who did not know of their plans and did not know Gonzales brought a firearm to the meeting. When they arrived at the apartment complex, Estrada and Gonzales met Whitley and another individual, Pablo Pecina, by the washroom. Gonzales asked for the drugs and Whitley asked for the money. Estrada stalled and Gonzales lifted his shirt and pulled out his firearm. To Gonzales's surprise, Whitley also pulled a weapon and both men fired.

Whitley was struck in the thigh and died from his injuries; the bullet that struck Gonzales grazed his head, requiring a couple of staples. Gonzales and Estrada ran back to the vehicle and Gonzales asked the driver to take him to the hospital. Instead, the driver pulled into a gas station a short distance away. The driver called 911, told the dispatch, "Hey, my friend's been shot. Here he is," and he and Estrada left. Before leaving, Gonzales gave Estrada the firearm and told him to get rid of it.

While the San Antonio police officers were investigating Whitley's shooting, they received the call of Gonzales's shooting. It was not until later that the officers realized the two gunshot victims were connected. When officers arrived at the gas station, Gonzales reported "We were

walking down the street, somebody drives by and shoots me." While they were investigating, Gonzales's mother arrived. His mother told him to tell the officers the truth. Gonzales finally told them "I was at the apartment complex, the guy shoots me and I shot him back." By all accounts, at that point in the evening, the officers were investigating the incident as a case of self-defense.

Gonzales was originally handcuffed and taken to the juvenile facility. However, shortly after arriving, the officers transported Gonzales to the Santa Rosa Children's Hospital to be treated for his injuries. While Gonzales was at the emergency room, San Antonio Police Detective Raymond Roberts interviewed Estrada. Estrada told the officer that Whitley shot first; however, when confronted by the officer, Estrada confessed their plan to rob Whitley and identified Gonzales as possessing and firing the weapon. Detective Roberts requested Detective Kim Bower proceed to Santa Rosa Children's Hospital to check on Gonzales's condition and to tell his mother that Detective Roberts would like to speak to him. Detective Bowers testified she gave Gonzales's mother a card with her phone number and asked to her contact them when Gonzales was released.

Gonzales arrived at the police station between 2:30 a.m. and 3:00 a.m. Detective Roberts told both Gonzales and his mother "If y'all don't want to do it tonight, we don't have to do it tonight." The record shows Detective Roberts insisted Gonzales was not under arrest, and that Gonzales and his mother came in on their own, and they were both free to leave. In fact, Detective Roberts told both Gonzales and his mother that Gonzales would be leaving at the end of the interview. Detective Roberts did not *Mirandize* Gonzales and did not take him before a magistrate.

Detective Roberts asked Gonzales if he knew what was going on, if he was in pain, and how he felt. Gonzales responded, "I feel fine." Detective Roberts testified that Gonzales was able to answer all of his questions and did not appear to be in any distress. Gonzales originally told Detective Roberts that Whitley fired first and that he returned fire; Detective Roberts confronted him with Estrada's version of events and Gonzales ultimately told Detective Roberts their plan

was to steal the marijuana from Whitley. Gonzales also told Roberts that he always takes a gun with him whenever he goes to buy weed.

When asked to relay what transpired, Detective Roberts described Gonzales's demeanor to the court. He "kind of chuckled, smiled and he said, 'That was my first mistake. My second was letting him stand up.'" When Detective Roberts asked Gonzales to explain what he meant, Gonzales explained that he should have pointed his weapon directly at Whitley instead of pointing it down.

Before leaving the police station, Detective Roberts gave Gonzales an opportunity to tell his mother the version of events he had relayed to the officer. Detective Roberts told Gonzales and his mother that the information would be presented to a magistrate and, if the magistrate determined the facts satisfied the elements set forth in the murder statute, then a warrant would issue. He also explained that if Gonzales ran, it would make matters worse. Later that morning, the magistrate issued an arrest warrant and Gonzales was arrested for the murder of James Whitley. On September 26, 2012, the State filed its original petition for waiver of jurisdiction and discretionary transfer to criminal court.

After a hearing, the juvenile trial court found probable cause to believe that Gonzales committed the offense. The court concluded that due to the nature of the offense, Gonzales's use of a deadly weapon, the psychiatric evaluation, the probation officer's certification and transfer report, and the recommendations from the probation officers, the State's petition should be granted.

## WAIVER OF JUVENILE JURISDICTION

Gonzales first argues the juvenile court erred in transferring jurisdiction to the criminal court.

**A.      Arguments of Parties**

*1.      Gonzales*

Gonzales contends the juvenile court erred when it found that the protection of the public and rehabilitation of Gonzales could not be served with the juvenile probation's resources and programs.  At the hearing, defense counsel maintained that a Texas Juvenile Justice Department commitment would have adequately protected the public and rehabilitated Gonzales.  Gonzales argued he was not a violent person by nature and exhibited excellent behavior throughout both the proceedings and all meetings with the probation officers.  Defense counsel argued that Gonzales was the picture of someone who could be rehabilitated.  He acknowledged the wrongfulness of Gonzales's delinquent behaviors and expressed his beliefs that Gonzales had improved because "he grew up."

On appeal, Gonzales further argues the trial court erred by failing to focus on the individual child.   Instead, Gonzales contends the juvenile court focused solely on the severity of the allegations.  Gonzales was cooperative with law enforcement and there were no reports of behavior issues during his incarceration.  Gonzales suffers from cerebral palsy and epilepsy and requires services available through the juvenile system.  Finally, counsel argues that determinate sentencing is a good option and would provide adequate protection to the community at large.

*2.      State*

The State contends the factors weigh heavily in favor of transferring jurisdiction.  Although the individual factors are subject to review, the ultimate determination is based on a review of the entire record.  The State acknowledged Gonzales's cerebral palsy and epilepsy; yet, the State pointed out neither diagnosis prevented him from committing either this offense or previous offenses which invoked the juvenile justice system.  Moreover, this was not just a murder—but felony murder.  Gonzales went to the scene intending to steal drugs from a drug dealer.  He took

his own weapon to the drug deal and murdered the dealer. This was the third time in four years that Gonzales was involved in the legal system and, although he was not classified as a gang member, he did claim membership in YTC (Young Texas Click), a "tagging crew."

### B. Texas Family Code Section 54.02

Texas Family Code section 54.02(a)(3) provides that prior to transferring a juvenile to criminal court for prosecution, the juvenile court must find (1) probable cause to believe the juvenile committed the offense alleged in the petition; and (2) the seriousness of the offense alleged, the background of the child, and the welfare of the community require criminal prosecution. TEX. FAM. CODE ANN. § 54.02(a)(3) (West 2014); *see also Faisst v. State*, 105 S.W.3d 8, 11 (Tex. App.—Tyler 2003, no pet.). The Court of Criminal Appeals recently addressed the juvenile court's role in waiver of juvenile jurisdiction cases.

> The transfer of a juvenile offender from juvenile court to criminal court for prosecution as an adult should be regarded as the exception, not the rule; the operative principle is that, whenever feasible, children and adolescents below a certain age should be "protected and rehabilitated rather than subjected to the harshness of the criminal system[.]"

*Moon v. State*, 451 S.W.3d 28, 36 (Tex. Crim. App. 2014) (alteration in original) (quoting *Hidalgo v. State*, 983 S.W.2d 746, 754 (Tex. Crim. App. 1999)).

The State bears the burden to convince the juvenile court, by a preponderance of the evidence, that "the welfare of the community requires transfer of jurisdiction for criminal proceedings, either because of the seriousness of the offense or the background of the child (or both)." *Id*. at 40–41 (citing *Faisst*, 105 S.W.3d at 11). The juvenile court's order must provide that the section 54.02(f) factors were taken into account in making the determination. *Id*. at 41–42. An appellate court may only set aside the juvenile court's determination upon a finding the trial court abused its discretion. *Id*. at 42.

## C.    Standard of Review

Until recently, the appellate courts applied different guidelines for the abuse of discretion standard. *Compare In re M.D.B.*, 757 S.W.2d 415, 417 (Tex. App.—Houston [14th Dist.] 1988, no writ) ("In reviewing the [juvenile] court's action for an abuse of discretion, this court must determine if the [juvenile] court acted without reference to any guiding rules and principles.") *with Bleys v. State*, 319 S.W.3d 857, 862–63 (Tex. App.—San Antonio 2010, no pet.), *abrogated by Moon*, 451 S.W.3d at 47. (reviewing the factual sufficiency of the evidence to support the juvenile court's finding under Section 54.02(f)(4)). In *Moon*, 451 S.W.3d at 47, the Court of Criminal Appeals explained that

> in evaluating a juvenile court's decision to waive its jurisdiction, an appellate court should first review the juvenile court's specific findings of fact regarding the Section 54.02(f) factors under "traditional sufficiency of the evidence review." But it should then review the juvenile court's ultimate waiver decision under an abuse of discretion standard.

The court further explained, "In other words, was [the juvenile court's] transfer decision essentially arbitrary, given the evidence upon which it was based, or did it represent a reasonably principled application of the legislative criteria?" *Id*. Our review begins with an analysis of the factors outlined in Texas Family Code section 54.02(f).

## D.    Analysis under Texas Family Code section 54.02(f)

Gonzales's case was called before the juvenile court on October 19, 2012.

### 1.    *Whether Alleged Offense Was Against a Person or Property*

The first factor listed in section 54.02(f) is "whether the alleged offense was against person or property." TEX. FAM. CODE. ANN. § 54.02(f)(1). The alleged offense was the capital murder of James Whitley. Detective Roberts testified as to his conversation with Gonzales and his admitted involvement in the offense. Gonzales admitted that he and Estrada planned to rob

Whitley during a marijuana purchase. Gonzales brought his firearm to the planned robbery. Gonzales planned the robbery and fired the shot that killed Whitley.

### 2. *Sophistication and Maturity of the Child*

The second factor is "the sophistication and maturity of the child." *Id*. § 54.02(f)(2); *Faisst*, 105 S.W.3d at 11. Bexar County Juvenile Probation Officer Traci Geppert testified that she met with Gonzales and his family on multiple occasions and she considered him to be sophisticated and mature. She further relayed that he understood both the proceedings and the charges against him.

Also available to the trial court was the psychiatric evaluation requested by the juvenile probation office. Dr. Heather Holder's report provided that "[Gonzales] knows right from wrong in a general sense, and he is specifically aware of the wrongfulness of the charge of which he is currently accused." Additionally, she concluded "it is believed that [Gonzales] is mature and sophisticated in that he is responsible for his conduct and able to assist his attorney in his defense." *See* TEX. FAM. CODE ANN. § 54.02(f)(2).

Gonzales's mother also testified before the juvenile court. She described her son as very much in control during the incident. When he originally lied to the officer, she directed him to tell the officers the truth and he did so.

### 3. *Record and Previous History of the Child*

The third factor to consider is "the record and previous history of the child." *Id.* § 54.02(f)(3); *Faisst*, 105 S.W.3d at 11. Gonzales had two prior juvenile probations. In 2008, he was placed on deferred probation for possession of a controlled substance, Xanax. In 2009, Gonzales was placed on formal probation for the charge of terroristic threats stemming from Gonzales threatening another student with a pair of scissors. *See* TEX. FAM. CODE ANN.

§ 54.02(f)(3); *Faisst*, 105 S.W.3d at 11. He completed his probation in April of 2010. Both charges resulted in Gonzales being expelled from the school he was attending.

At the time of his arrest, Gonzales was a student at Robert E. Lee High School and several letters were presented to the trial court describing Gonzales as a nice student without any outward displays of violent behavior.

### 4. Adequate Protection of the Public and Likelihood of Rehabilitation

The fourth factor to consider is "the prospect of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court." TEX. FAM. CODE ANN. § 54.02(f)(4); *Faisst*, 105 S.W.3d at 11. At the time of the offense, Gonzales was living with his mother and two sisters. When his mother was notified of the shooting, her initial reaction was that it could not be Gonzales because he was at home. She was unaware that he had left the residence and did not know that he owned a firearm. Geppert further addressed Gonzales's cerebral palsy and epilepsy diagnoses. He had a special education distinction based on his orthopedic impairment and a reading disorder. He was mainstreamed at the high school and had not exhibited behavioral issues while in detention. During cross-examination, Gonzales's mother conceded that Gonzales had recently run away from home because he did not like "living by the rules." However, after living on the streets for a period of time, he had returned to their home.

Geppert testified the juvenile court system's probation jurisdiction would end when Gonzales turned eighteen and the jurisdiction for Texas Youth Commission would end when Gonzales turned nineteen. Geppert explained the only other option, besides adult sentencing, was determinate sentencing. She did not believe determinate sentencing was proper because of the allegations: the charge was murder, Gonzales was carrying his weapon, and Gonzales was purchasing marijuana. Additionally, Geppert testified that she did not believe the juvenile

probation system had sufficient time to work with Gonzales given the severity of the allegations. *See* TEX. FAM. CODE ANN. § 54.02(f)(3); *Faisst*, 105 S.W.3d at 11. Her supervisor agreed, and so did a staffing committee, consisting of two supervisors and a Child Protective Services representative.

### 5. *Specific Factual Findings*

Not only must the record substantiate the court's findings, but the juvenile court must make "case-specific findings of fact" with respect to the 54.02(f) factors. *See Moon*, 451 S.W.3d at 51. Here, the juvenile court judge made the following findings:

1) Gonzales was alleged to have committed murder under Texas Penal Code section 19.02;

2) Gonzales was sixteen at the time of the hearing;

3) Gonzales was fifteen at the time of the offense;

4) Gonzales's mother resides in Bexar County;

5) no adjudication hearing had yet been conducted;

6) the parties were properly notified of the hearing;

7) prior to the hearing, the trial court obtained a psychological assessment including a psychological examination, a complete diagnostic study, a social evaluation, full investigation of Gonzales, Gonzales's circumstances, and the circumstances of the alleged offense;

8) the offense was against a person;

9) Gonzales is sophisticated and mature enough to be transferred into the criminal justice system and he understands the allegations, the court proceedings, and their possible consequences;

10) the procedures, services, and facilities available to the Juvenile Court are inadequate for rehabilitation of Gonzales while also protecting the public; and

11) after a full investigation and hearing, Gonzales's circumstances, and the circumstances of the offense, there is probable cause to believe that Gonzales committed the offense and, because of the seriousness of the offense and the background of Gonzales, the welfare of the community required that criminal proceedings proceed in Criminal District Court.

*6.      Analysis*

Here, the juvenile court's findings are substantially more case-specific than the findings analyzed in *Moon*.  *See Moon*, 451 S.W.3d at 51 (concluding the trial court's findings were superfluous because it only considered fact that offense was against another person).  The juvenile court made specific findings *as to Gonzales*.  *Cf. id*.  Based on a review of the record, including the trial court's findings of fact, we conclude the trial court provided "a sure-footed and definite basis from which an appellate court can determine that its decision was in fact appropriately guided by the statutory criteria, principled, and reasonable."  *Id*. at 49; *cf. Guerrero v. State*, No. 14-13-00101-CR, 2014 WL 7345987, at *3 (Tex. App.—Houston [14th Dist.] Dec. 23, 2014, no pet.) (mem. op., not designated for publication) (concluding the trial court's order was deficient under *Moon*).  Accordingly, we overrule Gonzales's first issue.

### MOTION TO SUPPRESS

Gonzales next contends the trial court erred in failing to suppress his statement given to Detective Roberts.

## A.      Arguments of the Parties

At trial and on appeal, defense counsel argued Gonzales was a scared fifteen-year old and that any reasonable individual in his position would have believed that he was not free to leave. The interrogation was, therefore, custodial and the officer was required to take Gonzales before a magistrate prior to obtaining a statement.

The State was adamant that Gonzales was not in custody when he gave his statement to Detective Roberts.  Both he and his mother were told they could leave and did not have to talk to the officers.  They were both told that no matter what Gonzales relayed to the officer, his mother would be taking him home that night.  And, in fact, as the officer promised, Gonzales left with his mother and the case was presented to a magistrate.

**B.**     **Standard of Review**

When an appellate court reviews a trial court's ruling on a motion to suppress, we apply a bifurcated standard. *State v. Kelly*, 204 S.W.3d 808, 818–19 (Tex. Crim. App. 2006); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). When a question turns on credibility and demeanor, an appellate court views the evidence in the light most favorable to the trial court's ruling and gives "almost total deference to a trial court's determination of the historical facts that the record supports." *Guzman*, 955 S.W.2d at 89; *accord Montanez v. State*, 195 S.W.3d 101, 106 (Tex. Crim. App. 2006) (quoting *Guzman*). We give the same deference to the trial court's rulings on mixed questions of law and fact "if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor." *Guzman*, 955 S.W.2d at 89; *accord Montanez*, 195 S.W.3d at 106.

We review other mixed questions of law and fact and questions of law de novo. *Guzman*, 955 S.W.2d at 89; *accord Montanez*, 195 S.W.3d at 106. When custody attaches is a mixed question of law and fact. *Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007); *Garza v. State*, 34 S.W.3d 591, 593 (Tex. App.—San Antonio 2000, pet. ref'd).

**B.**     **Texas Family Code section 51.09**

When a defendant is a juvenile at the time of his arrest, the provisions of the Texas Family Code control issues involving his substantive rights. *Roquemore v. State*, 60 S.W.3d 862, 866 (Tex. Crim. App. 2001). Gonzales contends his interrogation by Detective Roberts constituted a custodial interrogation and that his confession should have been suppressed under Texas Family Code section 51.095 because he was not brought before a magistrate. *See* TEX. FAM. CODE ANN. § 51.095 (West 2014); *Meadoux v. State*, 307 S.W.3d 401, 408 (Tex. App.—San Antonio 2009), *aff'd*, 325 S.W.3d 189 (Tex. Crim. App. 2010).

### C.   Gonzales's Interrogation

In determining whether an individual is in custody, an appellate court examines all of the circumstances surrounding the interrogation to determine if there was a formal arrest or "restraint on freedom of movement to the degree associated with a formal arrest." *Stansbury v. California*, 511 U.S. 318, 322 (1994) (internal quotation marks omitted); *In re D.J.C.*, 312 S.W.3d 704, 712 (Tex. App.—Houston [1st Dist.] 2009, no pet.).   This determination focuses on the objective circumstances of the interrogation and not on the subjective views of either the interrogating officers or the person being questioned. *See Stansbury*, 511 U.S. at 323; *In re D.J.C.*, 312 S.W.3d at 712.   Our review focuses on whether, in light of the particular circumstances, a reasonable person would have felt that he was at liberty to terminate the interrogation and leave. *Thompson v. Keohane*, 516 U.S. 99, 112 (1995); *In re D.J.C.*, 312 S.W.3d at 712.

In *Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996), the Court of Criminal Appeals set forth four factors relevant to the determination of whether an individual is in custody: (1) Was the suspect "physically deprived of his freedom of action in any significant way"?; (2) Did "a law enforcement officer tell the suspect that he cannot leave"?; (3) Did the "law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted"?; or (4) Was there "probable cause to arrest and law enforcement officers [did] not tell the suspect that he [was] free to leave"? *Id.*; *see also In re D.J.C.*, 312 S.W.3d at 713.   We remain mindful that because the custody determination is based entirely on objective circumstances, whether the law enforcement official had the subjective intent to arrest is irrelevant unless that intent is somehow communicated to the suspect. *Stansbury*, 511 U.S. at 323–24; *Dowthitt*, 931 S.W.2d at 254; *In re D.J.C.*, 312 S.W.3d at 713. We, therefore, turn to an analysis of each of the *Dowthitt* factors.

*1.* *Was Gonzales Physically Deprived of His Freedom of Action?*

"[O]rdinarily, when a person voluntarily accompanies a law enforcement officer to a certain location, even though the person knows or should know that the officer suspects that he or she may have committed or may be implicated in the commission of a crime, the person is not restrained or 'in custody.'" *Garcia v. State*, 237 S.W.3d 833, 836 (Tex. App.—Amarillo 2007, no pet.) (citing *Miller v. State*, 196 S.W.3d 256, 264 (Tex. App.—Fort Worth 2006, pet. ref'd)). "When the circumstances show that the individual acts upon the invitation or request of the police and there are no threats, express or implied, that he will be forcibly taken, then that person is not in custody at that time." *In re D.J.C.*, 312 S.W.3d at 713; *Garcia*, 237 S.W.3d at 836 (citing *Shiflet v. State*, 732 S.W.2d 622, 628 (Tex. Crim. App. 1985)).

Here, the only testimony before the juvenile court was that Gonzales and his mother were told they did not have to speak to the officers and that they could leave at any time. Gonzales's mother did testify that Detective Bowers told her that the officers "thought it was self-defense and that if I would take him back that they could clear it all up." However, that does not rebut the officer's testimony that Gonzales and his mother knew they could leave the interrogation if they chose to do so.

*2.* *Did Detective Roberts Communicate that Gonzales Was Not Free to Leave?*

There is no indication, and Gonzales does not allege, that at any point during his conversation with Detective Roberts that Detective Roberts, or any other individual, told Gonzales that he was not free to leave. All evidence contained within the record supports the contrary proposition.

*3.* *Would a Reasonable Person Believe His Freedom of Movement Was Restricted?*

At several points *prior to the interview*, and at several points *during the interview*, Detective Roberts told Gonzales that he would be leaving the police station after giving his

statement. Detective Roberts testified he did not consider Gonzales in custody and did not plan to arrest Gonzales prior to seeking an arrest warrant from a magistrate. Detective Roberts clearly articulated his subjective intent to Gonzales and his mother. *See Stansbury*, 511 U.S. at 323 (communicating subjective intent affects objective circumstances); *Dowthitt*, 931 S.W.2d at 254 (same); *In re D.J.C.*, 312 S.W.3d at 713 (same).

Although Gonzales contends that his age and the events earlier that evening would lead a reasonable person to believe he was in custody, the record simply does not support such an allegation. At no time following the doctor's examination at the hospital was Gonzales in handcuffs. Gonzales left the hospital with his mother and his mother took him to the police station. Nothing compelled either Gonzales or his mother to be at the police station. When they arrived, Gonzales and his mother were informed they were free to leave at any time and did not have to talk to the officers. After Gonzales finished speaking to Detective Roberts, he and his mother voluntarily left the police station.

> ### 4. *Was There Probable Cause to Arrest and Detective Roberts Failed to Tell Gonzales He Was Free to Leave?*

By the time Detective Roberts interviewed Gonzales, he had already interviewed Estrada and knew Gonzales was involved in Whitley's death. However, Detective Roberts testified that although Estrada claimed the firearm belonged to Gonzales and that Gonzales was the individual who shot Whitley, he anticipated Gonzales could reasonably point the finger at Estrada as the shooter. It was not until Gonzales told the officer that the gun used during the robbery was his firearm, that he brought the weapon to the apartment complex, and that he fired at Whitley that Detective Roberts was able to confirm Estrada's statement.

Although Detective Roberts may well have possessed probable cause to arrest Gonzales at some point during the interview, there is no controverting evidence that Detective Roberts

instructed Gonzales that he was free to leave and Gonzales left. Detective Roberts also clearly articulated his intent to present the evidence to the magistrate and that he anticipated a warrant would issue for Gonzales's arrest. The concern that an officer has established probable cause to arrest and does not tell the defendant that he is free to leave, as outlined in *Dowthitt* and its progeny, is not present in this case. *See Dowthitt*, 931 S.W.2d at 255; *Aguilera v. State*, 425 S.W.3d 448, 456 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd).

## D.    Application

Because this case turns on the trial court's determination of credibility and demeanor, we give almost total deference to the trial court's factual findings. *Montanez*, 195 S.W.3d at 106; *Guzman*, 955 S.W.2d at 89. Although the evidence supports Gonzales was originally handcuffed at the gas station, and when he was transported to the juvenile facility and Santa Rosa Children's Hospital, he was never in handcuffs or restrained in any manner when he spoke to Detective Roberts. Detective Roberts's testimony that he specifically told both Gonzales and his mother that she would be taking Gonzales home that evening was supported by Detective Bowers's testimony as well as the video recording of Gonzales's statement. Merely being questioned by an officer, even when the officer has reason to believe the juvenile is involved in a criminal activity, does not constitute custody. *Dowthitt*, 931 S.W.2d at 255; *In re D.J.C*., 312 S.W.3d at 713. Gonzales was present with his mother, both Gonzales and his mother agreed for Gonzales to speak to Detective Roberts, Gonzales was told that he was not under arrest, and he left the police station after his statement.

Because the evidence supports that Gonzales was free to leave at any time and that he elected to speak to Detective Roberts, we conclude that a reasonable person would have believed he was at liberty to terminate the interrogation and leave. *See Thompson*, 516 U.S. at 112; *Stansbury*, 511 U.S. at 323; *Dowthitt*, 931 S.W.2d at 254–55. Accordingly, the trial court did not

abuse its discretion in allowing Detective Roberts to testify regarding Gonzales's statement and to admit a video-recording of the same statement into testimony. We, therefore, overrule Gonzales's second issue.

## CONCLUSION

Having overruled both of Gonzales's issues on appeal, we affirm the trial court's judgment.

Patricia O. Alvarez, Justice

PUBLISH



# Fourth Court of Appeals
## San Antonio, Texas

### JUDGMENT

No. 04-14-00352-CR

**JOHN GONZALES III**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 386th Judicial District Court, Bexar County, Texas
Trial Court No. 2013CR7917
Honorable Laura Parker, Judge Presiding

BEFORE JUSTICE ALVAREZ, JUSTICE CHAPA, AND JUSTICE PULLIAM

In accordance with this court's opinion of this date, the trial court's judgment is
AFFIRMED.

SIGNED May 6, 2015.

_____
Patricia O. Alvarez, Justice