

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-15-00108-CR

Isaac Nathaniel **RODRIGUEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 386th Judicial District Court, Bexar County, Texas
Trial Court No. 2013CR2038
Honorable Laura Parker, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:    Rebeca C. Martinez, Justice
Patricia O. Alvarez, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  September 16, 2015

AFFIRMED

Appellant Isaac Nathaniel Rodriguez, a juvenile, was charged with murder.  Upon motion by the State, the juvenile court waived jurisdiction and transferred the matter to criminal court. After Rodriguez's motion to suppress was denied by the district court judge, he entered a plea of guilty and was sentenced to thirty years' confinement in the Institutional Division of the Texas Department of Criminal Justice and assessed a fine in the amount of $1,000.00.  In his sole issue on appeal, Rodriguez claims the juvenile court erred in transferring jurisdiction to the criminal court.  We affirm the juvenile court's order.

## FACTUAL BACKGROUND

Rodriguez was born June 1, 1996, and was living with the victim, Adriana Terry, at the time she was murdered. Although Terry and Rodriguez were not biologically related, Rodriguez's mother had dated Terry's son. Terry was a grandmother figure to Rodriguez, and even had temporary conservatorship at one point during his childhood.

As a result of his mother's drug habit, and the accompanying unstable family life, Rodriguez lived with Terry at several points in his life. During those times, Terry enrolled Rodriguez in four different schools. On the day she was murdered, Terry had withdrawn Rodriguez from Premier Academy and was enrolling him at Madison High School. Gema Ramirez, Terry's niece, explained that as a result of Terry moving back to Benavides, Texas, Rodriguez was moving back to his mother's house.

Around 2:00 p.m. on September 12, 2012, Ramirez, who also lived at Terry's home, found a damaged bathroom door, partially off the hinges, and Terry in the bathroom bleeding profusely from a skull fracture. Terry also had multiple abrasions, contusions, and stab wounds to her abdomen. Terry was still alive, but could not speak and was experiencing trouble breathing. EMS was contacted and Terry was transported to hospital where she died several hours later from cranial cerebral injuries, or skull fractures.

When police arrived to investigate, they found an aluminum baseball bat near the entry to the bathroom, along with a knife blade and knife handle. The bat and the knife blade were both bloody and located approximately three feet from where Terry was found. Rodriguez arrived while police were investigating the crime scene. Witnesses reported Rodriguez walked up the middle of the street and straight toward the house, disregarding the obvious chaos of the scene. Ramirez approached him and asked him where he had been. Rodriguez simply responded that he "went to

eat." Officer Teresa Martin stopped Rodriguez from entering the house. She questioned him, but he was unresponsive. Rodriguez looked at the front door of Terry's home, and stated "I did it."

Rodriguez was detained following his statement. Officer Tim Bowen drove Rodriguez to youth services, to the magistrate's office to be magistrated, and then returned Rodriguez to youth services. While on a restroom break, Rodriguez asked Officer Bowen if he could talk to him. Rodriguez again confessed, "I did it," telling the officer that he wanted to make his father proud. After further questions, Officer Bowen asked Rodriguez "if he was talking about what happened to his grandmother, and [Rodriguez] said, 'I did it because I love my daddy.'" Officer Bowen inquired whether his father told him to do it, and Rodriguez responded in the negative.

Rodriguez was charged with murder. On October 24, 2012, the State filed its original petition for waiver of jurisdiction and discretionary transfer to criminal court. In the time leading up to the transfer hearing, Bexar County Juvenile Probation Officer Traci Geppert attempted to obtain a psychological evaluation of Rodriguez. However, based on the advice of counsel, Rodriguez refused to participate in the evaluation.

After a hearing, the juvenile trial court found probable cause to believe that Rodriguez committed the offense. The court concluded that due to the serious nature of the offense and for protection of the public, the State's petition for transfer to criminal court should be granted.

After his motion to suppress was overruled by the trial court, Rodriguez entered a plea of guilty to murder in district court. He was sentenced to thirty years' confinement in the Institutional Division of the Texas Department of Criminal Justice and assessed a fine in the amount of $1,000.00.

On appeal, Rodriguez contends that the juvenile court had insufficient evidence to transfer his case to criminal court.

**B.** **Arguments of the Parties**

Rodriguez argues the evidence was factually insufficient. He also contends the court's transfer order used boilerplate language, without the required case-specific findings, to support the juvenile court's waiver of jurisdiction.

The State counters the juvenile court possessed sufficient evidence to support its finding that the case should be transferred to district court.

### TEXAS FAMILY CODE SECTION 54.02

**A.** **Transfer to Criminal Court for Prosecution**

Texas Family Code section 54.02(a)(3) provides that prior to transferring a juvenile to criminal court for prosecution, and after a full investigation and a hearing, the juvenile court must determine (1) probable cause exists to believe the juvenile committed the alleged offense and (2) the seriousness of the offense, the background of the child, and the welfare of the community require criminal prosecution. *See* TEX. FAM. CODE ANN. § 54.02(a)(3) (West 2014); *see also Gonzales v. State*, No. 04-14-00352-CR, 2015 WL 2124773, at *3 (Tex. App.—San Antonio May 6, 2015, pet. ref'd).

At the juvenile court, the State bears the burden of proving, by a preponderance of the evidence, that waiver of the juvenile court's jurisdiction is appropriate. *Moon v. State*, 451 S.W.3d 28, 40–41 (Tex. Crim. App. 2014); *Faisst v. State*, 105 S.W.3d 8, 11 (Tex. App.—Tyler 2003, no pet.). The juvenile court's order must show that the 54.02(f) factors were considered in making the determination. *Moon*, 451 S.W.3d at 41–42. "If the juvenile court waives jurisdiction, it is required to 'state specifically in the order its reasons for waiver and certify its action, including the written order and findings of the court.'" *Guerrero v. State*, No. 14-13-00101-CR, 2014 WL 7345987, at *2 (Tex. App.—Houston [14th Dist.] Dec. 23, 2014, no pet.) (mem. op.) (quoting TEX. FAM. CODE ANN. § 54.02(h)); *accord Moon*, 451 S.W.3d at 38.

**B.** **Standard of Review**

In *Moon*, 451 S.W.3d at 47, the Court of Criminal Appeals set forth two questions in determining whether the juvenile court abused its discretion:

(1) did the [juvenile] court have sufficient information upon which to exercise its discretion; and

(2) did the [juvenile] court err in its application of discretion? A traditional sufficiency of the evidence review helps answer the first question, and we look to whether the [juvenile] court acted without reference to any guiding rules or principles to answer the second.

*Id.* (alterations in original); *accord Gonzales*, 2015 WL 2124773, at *4. The court warned, "As long as the appellate court can determine that the juvenile court's judgment was based upon facts that are supported by the record, it should refrain from interfering with that judgment." *Moon*, 451 S.W.3d at 46

**C.** **Facts Presented Before the Juvenile Court**

Our review begins with an analysis of the factors outlined in section 54.02(f) of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 54.02(f).

*1.* *Whether Alleged Offense Was Against a Person or Property*

We first look at "whether the alleged offense was against person or property." *Id.* § 54.02(f)(1). Here, the alleged offense was the murder of Adriana Terry, a first-degree felony.

At the crime scene, prior to any questions asked by the officer, Rodriguez told Officer Martin, "I did it." Officer Martin explained that he understood Rodriguez to be saying he caused Terry's injuries. We note Rodriguez volunteered this information prior to being identified as a suspect and while staring at the front door of Terry's home in the midst of the crime scene investigation.

After Rodriguez was magistrated, Rodriguez requested to speak to Officer Bowen and Rodriguez again made the statement, "I did it." Officer Bowen confirmed Rodriguez was

confessing to the injuries suffered by Terry. *See Gonzales*, 2015 WL 2124773, at *4 (holding defendant's confession to murder met factor 54.02(f)(1)); *see also Bleys v. State*, 319 S.W.3d 857, 860 (Tex. App.—San Antonio 2010), *abrogated by Moon v. State*, 451 S.W.3d 28 (Tex. Crim. App. 2014) (confessing to aggravated assault).

Rodriguez struck Terry with a baseball bat and inflicted stab wounds to her abdomen. The use of multiple weapons is an indication of the seriousness of the offense. *See Garcia v. State*, No. 09-10-00020-CR, 2011 WL 379117, at *7 (Tex. App.—Beaumont Feb. 2, 2011, pet. ref'd) (mem. op., not designated for publication) (finding a beating that led to death was extremely brutal due in part to the use of both a knife and chair spindles). This was an offense against the person and as such should be given greater weight in favor of transfer. *See* TEX. FAM. CODE ANN. § 54.02(f); *Moon*, 451 S.W.2d at 38.

### 2. *Sophistication and Maturity of the Child*

The second factor is "the sophistication and maturity of the child." TEX. FAM. CODE ANN. § 54.02(f)(2); *Faisst*, 105 S.W.3d at 11.

Probation Officer Traci Geppert met with Rodriguez twice a week for three months leading up to his transfer hearing. In creating her Discretionary Transfer Hearing Report, Geppert interviewed Rodriguez's parents, school officials, Texas Department of Criminal Justice officials, Texas Juvenile Justice Department officials, and detention officials; she also reviewed the police reports and district attorney's file. Rodriguez's case was also reviewed by Geppert's supervisor and by the staffing committee.

Rodriguez was sixteen and a half years old at the time of his detention, and he displayed behavior in line with his age. Geppert testified Rodriguez was sophisticated and mature and, at times, even felt he was manipulating the conversation. Rodriguez was able to understand the seriousness of the charge against him and the difference between a juvenile and a criminal

proceeding. *See Gonzales*, 2015 WL 2124773, at \*4 (citing understanding of proceedings and charge as evidence of sophistication and maturity). Geppert relayed Rodriguez was able to communicate with the employees, teachers, and other detainees at the detention center. *See Matter of S.E.C.*, 605 S.W.2d 955, 958 (Tex. Civ. App.—Houston [1st Dist.] 1980, no writ) (holding psychiatrist's description of appellant as "cooperative, candid, and very articulate" supported finding that appellant was sophisticated). Geppert explained,

> I believe that he is sophisticated and mature enough. That he understands the information that has been provided to him. He understands the differences between the adult and the juvenile system regarding the allegations that have been made against him. I do believe [that] he's sophisticated and mature enough to stand trial as an adult.

Finally, Geppert opined Rodriguez's ability to understand and follow his attorney's direction not to participate in the psychological examination was further evidence that he was sophisticated and mature enough to capably assist his counsel.

### 3. *Record and Previous History of the Child*

We turn to the third factor—"the record and previous history of the child." TEX. FAM. CODE ANN. § 54.02(f)(3); *Faisst*, 105 S.W.3d at 11.

This was Rodriguez's first referral to the juvenile system in Bexar County. However, "a court does not abuse its discretion by finding the community's welfare requires transfer due to the seriousness of the crime alone, despite the child's background." *Faisst*, 105 S.W.3d at 11; *accord McKaine v. State*, 170 S.W.3d 285, 291 (Tex. App.—Corpus Christi 2005, no pet.) (op. on reh'g); *see also In re M.A.*, 935 S.W.2d 891, 897 (Tex. App.—San Antonio 1996, no writ) (finding sufficient evidence to transfer the case from juvenile court to district court due to seriousness of the crime even absent a previous criminal record).

Although Rodriguez had no juvenile record, his previous history substantiates years fraught with problems. Rodriguez began abusing alcohol as early as seven years of age and started using

marijuana at the age of nine. Geppert reported, due to his moving around between family members, Rodriguez attended at least twelve schools throughout his childhood. At his most recent school, Rodriguez was in trouble for not following directions, sleeping in class, not being redirected, and being unresponsive toward the teachers. When the principal at this school intervened on one occasion, Rodriguez very nonchalantly responded, "I don't know what you're talking about." Rodriguez's troubling history, and lack of response to authority figures, support a finding that the juvenile system is not prepared to adequately protect the public and rehabilitate him.

### 4. *Adequate Protection of the Public and Likelihood of Rehabilitation*

The fourth factor we consider is "the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court." TEX. FAM. CODE ANN. § 54.02(f)(4); *Faisst*, 105 S.W.3d at 11.

Geppert testified that although the resources of the juvenile system would be helpful to Rodriguez, he would soon "age out" of the system. Rodriguez was sixteen and a half at the time of the transfer hearing and the juvenile probation system would only retain jurisdiction until he turned nineteen. The only option besides adult sentencing would be determinate sentencing. Given the serious nature of the offense, and the short time available to the juvenile system, Geppert testified,

> I don't feel that the juvenile probation department has the time nor the resources to work with [Rodriguez] based on his nature of the offense.

She explained that there was a huge need for rehabilitation and two and a half years simply was not sufficient. Geppert continued she also did not believe the public would be adequately protected if Rodriguez were left in the juvenile system. *See Gonzales*, 2015 WL 2124773, at \*5 (finding that the severity of the crime and the short time available to the juvenile system supported the trial

court's transfer order); *Faisst*, 105 S.W.3d at 15 (finding that maintaining the jurisdiction of the juvenile system was not appropriate due to the severity of the offense which required a long period of supervision and probation).

> *5.      Specific Factual Findings*

Not only must the record substantiate the juvenile court's findings, but the juvenile court must make "case-specific findings of fact" with respect to the 54.02(f) factors. *See Moon*, 451 S.W.3d at 51. Here, after careful consideration of all the evidence presented, the juvenile court made the following findings:

1. Rodriguez was alleged to have committed murder under Section 19.02 of the Texas Penal Code.

2. Rodriguez was sixteen years old at the time of the transfer hearing.

3. Rodriguez was fourteen years or older but under seventeen years old at the time he is alleged to have committed the offense.

4. Rodriguez's mother resides in Bexar County.

5. No adjudication hearing has been conducted to this point.

6. The notice requirements of Sections 53.04, 53.05, 53.06, and 53.07 were satisfied.

7. Prior to the hearing, the Court ordered a psychological examination, complete diagnostic study, social evaluation, and full investigation of the child, his circumstances, and the circumstances of the alleged offense; although Rodriguez refused to cooperate in the psychological examination, all other studies were completed.

8. The Court considered whether the offense was against person or property and found the offense was against a person.

9. The Court considered Respondent's sophistication and maturity and found him sophisticated and mature enough to be transferred into the criminal justice system; he understands the allegations, court proceedings, and possible consequences.

10. After considering the record and previous history of the child, the prospects of adequate protection of the public, and the likelihood of rehabilitation of the child by use of the procedures, services, and facilities currently available to the Juvenile Court, the Court found the Juvenile Court inadequate for the rehabilitation of the child while also protecting the public.

11. Following a full investigation and hearing, the Court found probable cause to believe the child committed the offense and that the seriousness of the offense, background of the child, and welfare of the community requires that the criminal proceedings move to Criminal District Court.

### D. Analysis

Based on a review of the entire record, we conclude the transfer order is factually and legally sufficient to uphold the juvenile court's finding that the case should be transferred to criminal court. After a hearing, with extensive cross-examination by defense counsel, the juvenile court's order clearly substantiates that the 54.02(f) factors were considered in the juvenile court's determination. *See Moon*, 451 S.W.3d at 40–41; *Gonzales*, 2015 WL 2124773, at \*5; *see also* TEX. FAM. CODE ANN. § 54.02(h); *Moon*, 451 S.W.3d at 38.

Given the evidence in the record and the specific factual findings of the juvenile court, we cannot conclude that the juvenile court's determination to move the proceedings to criminal court was arbitrary or unreasonable. *See Faisst*, 105 S.W.3d, at 12. To the contrary, the juvenile court provided a "sure-footed and definite basis" for its decision. *Moon*, 451 S.W.3d at 49.

### CONCLUSION

Accordingly, we affirm the juvenile court's order and overrule Rodriguez's sole issue on appeal.

Patricia O. Alvarez, Justice

PUBLISH