

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00133-CV

**IN THE MATTER OF S.T.**

From the County Court at Law, Starr County, Texas
Trial Court No. JV-17-035
Honorable Romero Molina, Judge Presiding

Opinion by:     Sandee Bryan Marion, Chief Justice

Sitting:     Sandee Bryan Marion, Chief Justice
     Rebeca C. Martinez, Justice
     Irene Rios, Justice

Delivered and Filed: November 14, 2018

AFFIRMED

S.T. appeals the juvenile court's order waiving its jurisdiction and transferring him to district court for criminal proceedings. In his brief, S.T. challenges the sufficiency of the evidence to support the juvenile court's factual findings and also contends the juvenile court abused its discretion in ordering his transfer to the adult criminal justice system. We affirm the juvenile court's order.

### PROCEDURAL BACKGROUND

On August 14, 2017, the State filed a petition alleging S.T., who was sixteen, engaged in delinquent conduct on or about July 30, 2017, by: (1) intentionally and knowingly causing the death of C.O. by guiding J.L.G. to a location where J.L.G. fired six rounds at C.O.; (2) intentionally and knowingly destroying evidence at the scene of the murder; and (3) failing to report the

commission of a felony. The same day, the juvenile court held a detention hearing and ordered S.T. to be detained.

On October 4, 2017, the State filed its Petition for Discretionary Transfer to Criminal Court, asking the juvenile court to waive its exclusive jurisdiction and transfer S.T. to district court for criminal proceedings. After hearing three days of evidence, the juvenile court verbally pronounced its ruling waiving its jurisdiction and transferring S.T. to district court for criminal proceedings. The juvenile court signed a written order the same day. After listing the factors the juvenile court considered in making its decision, the juvenile court's order stated that the court specifically found probable cause to believe that S.T.: (1) intentionally and knowingly caused C.O.'s death by guiding J.L.G. to a secluded ranch where J.L.G. shot and killed C.O.; and (2) intentionally and knowingly altered, distressed, or concealed the body of C.O. by burning the body, cutting the body, placing the body in black garbage bags, and dumping the bags in a secluded ranch when S.T.: (a) knew an investigation was in progress into a missing child, C.O., with intent to impair the availability of C.O.'s body as evidence in the investigation; and (b) knew an offense had been committed, to-wit: the murder of C.O. with intent to impair the availability of C.O.'s body as evidence in any subsequent investigation or official proceedings relating to the offense. The juvenile court's order then listed the evidence elicited at the hearing in support of its probable cause finding. The juvenile court's order further stated the court found: (1) S.T. was of sufficient sophistication and maturity to be tried as an adult; (2) no testimony was provided of a record or previous history of S.T.; and (3) the prospects of adequate protection for the public and the likelihood of reasonable rehabilitation of S.T. by use of the procedures, services, and facilities that are currently available to the court were in doubt. The juvenile court's order also referred to specific evidence supporting two of the foregoing findings.

S.T. appeals.

**TEXAS FAMILY CODE SECTION 54.02**

Section 54.02(a) of the Juvenile Justice Code provides, in pertinent part, that the juvenile court may waive its exclusive original jurisdiction and transfer a child to district court for criminal proceedings if the following is determined:

> (1) the child is alleged to have violated a penal law of the grade of felony;

> (2) the child was: (A) 14 years of age or older at the time [of the alleged] offense, if the offense is a … felony of the first degree, …; or (B) 15 years of age or older at the time [of the alleged] offense, if the offense is a felony of the second or third degree …, and no adjudication hearing has been conducted concerning that offense; and

> (3) after a full investigation and a hearing, the juvenile court determines that there is probable cause to believe that the child before the court committed the offense alleged and that because of the seriousness of the offense alleged or the background of the child the welfare of the community requires criminal proceedings.

TEX. FAM. CODE ANN. § 54.02(a) (West 2014). When determining whether the welfare of the community requires criminal proceedings because of the seriousness of the offense alleged or the background of the child under the third requirement, section 52.04(f) requires the juvenile court to consider the following non-exclusive factors:

> (1) whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against the person;

> (2) the sophistication and maturity of the child;

> (3) the record and previous history of the child; and

> (4) the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court.

*Id.* at § 54.02(f).

**STANDARD OF REVIEW**

"[I]n evaluating a juvenile court's decision to waive its jurisdiction, an appellate court should first review the juvenile court's specific findings of fact regarding the Section 54.02(f) factors under 'traditional sufficiency of the evidence review.'" *Moon v. State*, 451 S.W.3d 28, 47 (Tex. Crim. App. 2014). Under a legal sufficiency challenge, we credit evidence favorable to the challenged finding if a reasonable factfinder could and disregard contrary evidence unless a reasonable fact finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). If there is more than a scintilla of evidence to support the finding, a legal sufficiency challenge fails. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002); *Faisst v. State*, 105 S.W.3d 8, 12 (Tex. App.—Tyler 2003, no pet.). Under a factual sufficiency challenge, we consider all of the evidence presented to determine if the court's finding is so against the great weight and preponderance of the evidence as to be clearly wrong or unjust. *Moon*, 451 S.W.3d at 46 n.75 (internal citations omitted); *C.M. v. State*, 884 S.W.2d 562, 563 (Tex. App.—San Antonio 1994, no writ). Our review of the sufficiency of the evidence supporting waiver is limited to the facts the juvenile court expressly relied on in its transfer order. *Moon*, 451 S.W.3d at 50.

We must then review the juvenile court's ultimate waiver decision under an abuse of discretion standard. *Id*. at 47. "That is to say, in deciding whether the juvenile court erred to conclude that the seriousness of the offense alleged and/or the background of the juvenile called for criminal proceedings for the welfare of the community, the appellate court should simply ask, in light of its own analysis of the sufficiency of the evidence to support the Section 54.02(f) factors and any other relevant evidence, whether the juvenile court acted without reference to guiding rules or principles." *Id*. We must, however, remain mindful that "not every Section 54.02(f) factor must weigh in favor of transfer to justify the juvenile court's discretionary decision to waive its jurisdiction." *Id*. A juvenile court does not abuse its discretion if its transfer decision "represent[s]

a reasonably principled application of the legislative criteria." *Id*. The juvenile court must, however, "show its work" and specifically state the reasons for waiver. *Id*. at 49. "The juvenile court that shows its work should rarely be reversed." *Id*.

**ANALYSIS**

In his brief, S.T. challenges the juvenile court's findings that: (1) probable cause exists to support a determination that he committed the alleged offenses; and (2) the welfare of the community requires criminal proceedings because of the seriousness of the offense alleged or his background. *See* TEX. FAM. CODE ANN. § 54.02(a)(3).

A.      Probable Cause

The juvenile court need only determine probable cause exists that the juvenile committed the offense charged. *In re A.A.*, 929 S.W.2d 649, 653 (Tex. App.—San Antonio 1996, no writ). "Probable cause" for this purpose is defined as "sufficient facts and circumstances to warrant a prudent individual to believe the suspect committed or was committing an offense." *Id*. At a transfer hearing, the juvenile court is the sole judge of credibility and may choose to believe or disbelieve any or all of the witnesses' testimony. *In re C.M.M.*, 503 S.W.3d 692, 709 (Tex. App.—Houston [14th Dist.] 2016, pet. denied); *In re K.B.H.*, 913 S.W.2d 684, 689 (Tex. App.—Texarkana 1995, no writ); *In re D.W.L.*, 828 S.W.2d 520, 525 (Tex. App.—Houston [14th Dist.] 1992, no writ).

In support of its finding that probable cause exists to believe S.T. committed the alleged offenses, the juvenile court's order noted the "[t]estimony from Detective Humberto Vela, Sheriff's Investigator Dario Marquez and Texas Ranger Eric Lopez established through interviews/confessions with [S.T.], [P.S.], [J.L.G.], and Salvador [T.] along with forensic reports provided by Dr. Frank P. Salinas, (Autopsy Report) and Dr. Tara Rios (Forensic Dental Report) along with physical evidence from the crime scene established the following:"

That [S.T.] met with [J.L.G.] and [P.S.] at a Whataburger to discuss the luring of the victim [C.O.] to an isolated location, to murder [C.O.]. [S.T.] then took [J.L.G.] to the isolated ranch and waited for [P.S.] to lure [C.O.] to said ranch. Once at the ranch [S.T.] led [P.S.] and [C.O.] to the abandoned house, where [C.O.] was shot and killed by [J.L.G.] after lying in wait. [S.T.] and [P.S.] then assisted in carrying [C.O.'s] corpse into a fire pit after [C.O.] was killed by [J.L.G.]. [S.T.] then recruited his cousin Salvador [T.] to help dispose of the corpse of [C.O.]. [S.T.] then assisted in mutilating [C.O.'s] corpse by burning it, then cut it up and dismembered it. Finally, [S.T.] helped place and dispose [C.O.'s] corpse into three black trash bags and dumped in the secluded ranch with the intent to impair [C.O.'s] corpse availability as evidence for any investigation.

The manner in which [C.O.'s] corpse was mutilated was evidenced by both the interviews/confessions of [S.T.], [P.S.], [J.L.G.], and Salvador, but also proven by the Autopsy Report submitted by Dr. Frank P. Salinas.

A person is criminally responsible for an offense committed by the conduct of another if the person solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense with the intent to promote or assist the commission of the offense. TEX. PENAL CODE ANN. § 7.02(a)(2) (West 2011). Ranger Eric Lopez testified J.L.G. implicated S.T. in C.O.'s murder by assisting P.S. in placing C.O.'s body in a burn pit after J.L.G. shot and killed C.O. The same night of the murder, S.T. and his cousin Salvador returned to the murder scene in an effort to locate and destroy gun shell casings and any other evidence. Although Salvador told the investigating officers he returned to the crime scene by himself to burn and dismember C.O.'s body, Ranger Lopez believed S.T. was present and assisting during that process. Investigator Dario Marquez also testified he believed S.T. was present during that process because S.T. knew the number, type, and color of the trash bags into which the dismembered body parts were placed and the location where the bags were thrown. Although Ranger Lopez and Investigator Marquez testified that none of the participants stated S.T. knew J.L.G intended to lure C.O. to the abandoned house to murder him, the evidence established S.T. met with J.L.G. and P.S. prior to the murder, located the abandoned house where the murder occurred, and went to direct P.S. and C.O. to the location of the abandoned house as J.L.G. left the abandoned house to hide. Furthermore, when J.L.G. and P.S. dropped S.T.

back at his house after the murder, J.L.G. paid S.T. $2,000. Having reviewed all of the evidence, we hold the evidence is legally and factually sufficient to support the juvenile court's finding that there were sufficient facts and circumstances to warrant a prudent individual to believe S.T. was a party to the murder and intentionally and knowingly altered, distressed, or concealed the body of C.O.[1]

### B. Welfare of the Community Requires Criminal Proceedings.

As previously noted, in determining whether this requirement is met, the juvenile court must consider the following non-exhaustive factors:

(1) whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against the person;

(2) the sophistication and maturity of the child;

(3) the record and previous history of the child; and

(4) the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court.

*Id.* at § 54.02(f).

### 1. Section 54.02(f) Factors

Under the applicable standard of review, we first examine the sufficiency of the evidence to support the juvenile court's findings regarding the Section 54.02(f) factors. *Moon*, 451 S.W.3d at 47.

---

[1] In his briefing, S.T. argues the evidence is insufficient to support a finding that he was an active participant in the crime itself because his only participation was after the offense occurred. The juvenile court, however, is the sole judge of the weight to be given the testimony and the inferences to be drawn from the evidence. The juvenile court could have inferred S.T. was an active participant from the $2,000 payment and S.T.'s actions in locating the abandoned house and directing P.S. and C.O. to the house while J.L.G. hid outside.

a.      Nature of the Offense

After detailing the evidence supporting the serious, gruesome nature of the alleged offenses in support of its probable cause finding, the trial court also found the offenses were committed against a person. S.T. does not challenge the sufficiency of the evidence in support of this finding.

b.      S.T.'s Sophistication and Maturity

S.T. was sixteen when the offense was committed and at the time of the hearing. In its order, the juvenile court found S.T. "is of sufficient sophistication and maturity to be tried as an adult." In support of this finding, the trial court noted S.T. "understands right from wrong and appreciates the consequences of his actions as testified to by both Juvenile Probation Officer Maricela Gutierrez and Dr. [Javier] Martinez; and can be considered reasonably intelligent as testified by Norma Villanueva, Ph.D. ... [and] the testimony of Rosanna Flores."

As evidence supporting a finding that a juvenile is of sufficient sophistication and maturity, this court has generally relied on evidence that the juvenile understands the seriousness of the charges against him, the difference between a juvenile and criminal proceedings, knows right from wrong, and is able to assist his attorney in his defense. *Rodriguez v. State*, 478 S.W.3d 783, 787 (Tex. App.—San Antonio 2015, pet. ref'd); *Gonzales v. State*, 467 S.W.3d 595, 600 (Tex. App.—San Antonio 2015, pet. ref'd); *see also In re K.J.*, 493 S.W.3d 140, 151 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (noting in maturity and sophistication, courts place weight on whether the juvenile knows, right from wrong, whether the juvenile can assist his or her attorney in their defense, and whether the juvenile understands the differences between the adult and juvenile system as it applies to his alleged crimes).

In this case, Maricela Gutierrez, the assistant chief of the Starr County Juvenile Probation Department who was assigned as S.T.'s probation officer when he was detained, testified S.T. understands right from wrong and appreciates the consequences of his actions. Javier Martinez,

Ph.D., a licensed psychologist who performed a psychological evaluation on S.T., testified S.T. knew the difference between right and wrong and had no issues that would affect his ability to understand the proceedings. Dr. Martinez also testified S.T. was trying to assist his attorneys in his defense. Although Dr. Martinez also testified adolescents do not have the same maturity level as an adult,[2] and Norma Villanueva, Ph.D., a licensed clinical social worker called as an expert witness for S.T., testified S.T. was an average adolescent, the juvenile court could have determined from all of the evidence presented that S.T. was sophisticated and mature enough to be transferred into the criminal justice system.

c.      S.T.'s Record and Previous History

In its transfer order, the juvenile court found no testimony was provided of a record or previous history.[3] In its order, the juvenile court noted testimony elicited of S.T. being distraught when he returned home and discovered his deceased grandfather[4] lying on the floor which the juvenile court appeared to link to S.T.'s inability to maintain close relationships. In his brief, S.T. contends this evidence is not relevant to any finding of a prior history. First, we note the juvenile court expressly found no record or prior history. Second, we note the section 52.04(f) factors are non-exhaustive. Although this section 52.04(f) factor does not weigh in favor of the decision to transfer, the juvenile court's noting of S.T.'s inability to maintain close relationships can be weighed in determining whether the juvenile court abused its discretion in ordering the transfer. *See Moon*, 487 S.W.3d at 50 (providing appellate court must measure the sufficiency of the evidence to support facts expressly found by the juvenile court in its order).

---

[2] Dr. Martinez testified he would not recommend certification of any adolescent unless the adolescent "demonstrated a maturity level that is way above a typical adolescent" and stated he had never encountered such an "atypical juvenile" in his career.

[3] Although the juvenile court found no record or history, we note the record establishes S.T. admitted to both marijuana and alcohol use.

[4] The testimony actually related to his deceased grandmother.

d.      Prospects of Adequate Protection and Likelihood of S.T.'s Rehabilitation

In its transfer order, the juvenile court found the "prospects of adequate protection for the public and the likelihood of reasonable rehabilitation of [S.T.] by the use of the procedures, services, and facilities that are currently available to the Juvenile Court are in doubt." The order stated this finding was based on the following:

> The options available to the Court range from Probation, Placement at a Camp and/or Placement in the Texas Juvenile Justice Department (Maricela 23-21 through 26-21) which may or may not include placement into the Giddings State School, Capital and Serious Violent Offender Treatment Program. Said program having a success rate of a maximum of 50% and a low success rate of 32% according to testimony by Norma Villanueva Ph.D. (21-14 through 22-4). Determinate Placement would allow [S.T.] a second opportunity for release before being transferred to the Texas Department of Corrections within the next 3 years. Placement in the Texas Juvenile Justice Department may or may not include placement into the Giddings State School, Capital and Serious Violent Offender Treatment Program. Because there is not definitive control to be retained by this Court under Determinate Placement nor Placement in the Texas Juvenile Justice Department, the Court is of the opinion that they are not adequate to provide the proper protection of the public.

The first recommendation of Gutierrez, S.T.'s probation officer, was to transfer S.T. to adult criminal court because she did not believe the programs available in the juvenile system were adequate. Although Dr. Martinez recommended a long-term correctional-type placement in the Texas Juvenile Justice System, Dr. Martinez testified he is not familiar with the programs available at the Giddings State School. Dr. Villanueva testified she believed the Giddings State School had a very good success rate but then admitted the school reported its minimum success rate was 32% and its maximum success rate was 50%. Although she believed the school defined the success rate as not reoffending, she was not certain what other markers the school used to define success and the TJJD official with whom she spoke could not provide exact answers. Finally, Dr. Villanueva testified TJJD makes the assessment of where a juvenile is placed, and there is no guarantee that TJJD would place S.T. at the Giddings State School.

Having reviewed all of the evidence, we hold the evidence is legally and factually sufficient to support the juvenile court's finding that the procedures, services, and facilities available to the juvenile court are inadequate to rehabilitate S.T. while also protecting the public.

2.      Did the juvenile court abuse its discretion?

After reviewing the evidence to support the juvenile court's findings as to each of the section 54.02(f) factors, we next decide whether the juvenile court abused its discretion in determining the seriousness of the alleged offenses or S.T.'s background required criminal proceedings for the welfare of the community *Moon*, 451 S.W.3d at 47.

As previously detailed, the offenses involved murder followed by the gruesome burning and dismemberment of C.O.'s body, and the evidence supported a finding that probable cause existed that S.T. was a party to the murder. The evidence also supported a finding that probable cause existed that S.T. assisted in burning C.O.'s body, cutting it into pieces, placing those pieces in garbage bags, and dumping the bags on the secluded ranch. Given the juvenile court's detailed findings regarding the seriousness of the offenses, S.T.'s sophistication and maturity, and the doubtful ability of the juvenile system to rehabilitate S.T. while also protecting the public, we hold the juvenile court did not abuse its discretion in concluding the welfare of the community required criminal proceedings because of the seriousness of the alleged offense. *See Rodriguez*, 478 S.W.3d at 788 ("'[A] court does not abuse its discretion by finding the community's welfare requires transfer due to the seriousness of the crime alone, despite the child's background.'") (quoting *Faisst*, 105 S.W.3d at 11).

## CONCLUSION

The juvenile court's order is affirmed.

Sandee Bryan Marion, Chief Justice